RACHEL M. SPOSATO, #306045
rsposato@ch-law.com
JUDITH M. SASAKI, #119442
jsasaki@ch-law.com
NICHOLAS F. PHILLIPS, #354887
nphillips@ch-law.com
COLEMAN & HOROWITT, LLP
499 W. Shaw Ave., Suite 116
Fresno, CA 93704
Telephone: (559) 248-4820
Facsimile: (559) 248-4830

Attorneys for Plaintiff, AMABLE AGUILUZ, M.D., AMABLE DELOS REYES AGUILUZ JR, MD. INC. and OXNARD MEDICAL GROUP, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AMABLE AGUILUZ, M.D., AMABLE DELOS REYES AGUILUZ JR, MD. INC., and OXNARD MEDICAL GROUP, INC,<br><br>Plaintiff(s),<br><br>v.<br><br>ROBERT F. KENNEDY, JR., in his official capacity as Secretary of the Department of Health and Human Services, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, MEHMET OZ, in his official capacity as Administrator of the Centers for Medicare & Medicaid Services, CENTERS FOR MEDICARE & MEDICAID SERVICES, and NORIDIAN HEALTHCARE SOLUTIONS, LLC,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**CAUSES OF ACTION:**<br><br>**1. VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT; AND**<br><br>**2. VIOLATION OF THE FIFTH AMENDMENT** |

Plaintiffs, AMABLE AGUILUZ, M.D. ("Dr. Aguiluz"), AMABLE DELOS REYES AGUILUZ JR, MD. INC. (his "Professional Corporation"), and OXNARD MEDICAL GROUP, INC ("Oxnard"), by and through their attorneys, COLEMAN & HOROWITT, LLP, for their Complaint against Defendants ROBERT F. KENNEDY, JR., in his official capacity as Secretary

of the Department of Health and Human Services (the "Secretary" or "Mr. Kennedy"), UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES ("HHS"), MEHMET OZ, in his official capacity as Administrator of the Centers for Medicare & Medicaid Services (the "Administrator" or "Dr. Oz"); CENTERS FOR MEDICARE & MEDICAID SERVICES ("CMS"); and DOES 1–50, inclusive, allege, on knowledge as to their own actions, and otherwise upon information and belief, as follows:

**INTRODUCTION**

1. This is an action under the Fifth Amendment, U.S. Const., amend. V, the Administrative Procedure Act ("APA") codified as 5 U.S.C. §§ 551–559, the statutes governing judicial review of an agency's actions codified as 5 U.S.C. §§ 702-706, and 42 C.F.R. Part 498 – Appeals Procedures for Determinations that Affect Participation in the Medicare Program to compel Defendants to restore Plaintiffs' Medicare billing privileges. Plaintiffs' Medicare billing privileges are property rights, and Defendants deprived Plaintiffs of their property without due process of law by failing to process their requests for reconsideration within the statutory ninety (90) day period prescribed for those requests.

2. Without prior notice to Plaintiffs, Defendants revoked Plaintiffs' Medicare billing privileges on November 15, 2024.

3. Plaintiffs, by and through their attorneys, timely submitted requests for reconsideration or appeals to Defendants on January 16, 2025.

4. Defendant CMS confirmed receipt of those reconsideration requests on January 22, 2025, and stated: "Please be advised that CMS has 90 days to review your reconsideration request."

5. On May 8, 2025, in response to an inquiry from Plaintiffs by and through their attorneys, Defendant CMS stated: "The appeal submitted for Amable R. Aguiluz Jr and Amable Delos Reyes Aguiluz JR MD INC is still under review. We are working diligently to issue a decision as soon as possible. We will notify once a decision has been made."

6. On September 24, 2025, having received no such decision, Plaintiffs by and through their attorneys notified Defendant CMS that over two hundred forty (240) days had passed since the reconsideration requests were submitted, and Defendant CMS had therefore violated Plaintiffs'

civil and property rights.

7. Plaintiffs now seek declaratory and injunctive relief restoring their Medicare billing privileges and removing them from the CMS Preclusion List.

**JURISDICTION**

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 1346, in that this is a civil action arising under the Fifth Amendment, U.S. Const., amend. V, the APA, and 42 C.F.R. Part 498. This Court has further remedial authority under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 et seq. Pursuant to 5 U.S.C. § 702, sovereign immunity is waived for the United States.

**VENUE**

9. Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of property that is the subject of the action is situated in this district.

**PARTIES**

10. Plaintiff AMABLE AGUILUZ, M.D. ("Aguiluz") is an individual who resides in Buena Park, California. Plaintiff Aguiluz is a citizen of the United States.

11. Plaintiff AMABLE DELOS REYES AGUILUZ JR, MD. INC. ("ADRA MD") is incorporated in California and has its principal place of business at 21500 Pioneer Boulevard, Suite 309, Hawaiian Gardens, California 90716-2605.

12. Plaintiff OXNARD MEDICAL GROUP INC. ("Oxnard") is a corporation that is incorporated in California and has its principal place of business 12511 Oxnard Street, North Hollywood, California 91606.

13. Defendant ROBERT F. KENNEDY, JR. is an individual and the Secretary of the United States Department of Health and Human Services and that agency's highest-ranking official (the "Secretary" or "Mr. Kennedy"). He is charged with the supervision and management of all decisions and actions of that agency. *See,* 42 U.S.C. § 300u. He is sued in his official capacity.

14. Defendant UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES ("HHS") is an agency of the United States.

/ / /

15. Defendant MEHMET OZ is an individual and the Administrator of the Centers for Medicare & Medicaid Services and is sued in his official capacity (the "Administrator" or "Dr. Oz"). He is being sued in his official capacity.

16. Defendant CENTERS FOR MEDICARE & MEDICAID SERVICES ("CMS") is an agency that is housed within HHS.

17. Upon information and belief, Defendant NORIDIAN HEALTHCARE SOLUTIONS, LLC ("Noridian") is a limited liability company formed under the laws of Delaware and does business in Los Angeles, California. Upon information and belief, Defendant Noridian was authorized to conduct business in California on March 6, 2013. Defendant Noridian is a contractor of CMS or HHS responsible for providing certain administrative services relating to Medicare billing practices and compliance.

## FACTUAL ALLEGATIONS AND LEGAL BACKGROUND

### *A. Plaintiff Aguiluz Retained As Independent Consultant For Forever in Peace Hospice Care, Inc.*

18. In 2023, Forever in Peace Hospice Care, Inc., a California corporation, was looking for a physician to work as an outside consultant who could oversee incoming referrals by reviewing patients' medical records to determine whether the respective patient's condition qualifies the patient for hospice. Plaintiff Aguiluz was referred to Forever in Peace Hospice Care, Inc. for this reason in 2023.

19. On or about 2023, Forever in Peace Hospice Care, Inc. entered into a contract with Plaintiff Aguiluz to retain Plaintiff Aguiluz as an outside consultant who would oversee incoming referrals by reviewing patients' medical records to determine whether the respective patient's condition qualified the patient for hospice. Plaintiff Aguiluz was not hired as an employee of Forever In Peace Hospice Care, Inc., and has never been an employee of Forever in Peace Hospice Care, Inc.

20. Although Forever in Peace Hospice Care, Inc. may have referred to him as its "Medical Director", Plaintiff Aguiluz was not a member of the board of directors of Forever in Peace Hospice Care, Inc., and he never met with patients directly or provided any other service to

Forever in Peace Hospice Care, Inc.

21. Plaintiff Aguiluz, as an independent contractor, agreed to provide Forever in Peace Hospice Care, Inc. with consulting services for a monthly fee of Five Hundred Dollars ($500). Plaintiff Aguiluz's consulting services were limited to examining certain patients and prescribing the care those patients needed and supervising the care provided to those patients. Plaintiff Aguiluz never met with patients directly nor provided any other service to Forever in Peace Hospice Care, Inc.

22. In order that Plaintiff Aguiluz could conduct the consulting services, a representative of Forever in Peace Hospice Care, Inc. would deliver medical records to Plaintiff Oxnard. When Plaintiff Aguiluz had completed reviewing the medical records, a representative of Forever in Peace Hospice Care, Inc. would then pick up the records from the Plaintiff Oxnard. Plaintiff Aguiluz did not review records at any Forever in Peace Hospice Care, Inc. location.

23. Neither Plaintiff Aguiluz nor any business entity owned or controlled by him received any dividends, distributions, or profits from Medicare billing or collections by Forever in Peace Hospice Care, Inc., and Plaintiff Aguiluz's consulting fee was not tied to the finding of qualification one way or another. Plaintiff Aguiluz was never a shareholder of Forever in Peace Hospice Care, Inc. but was merely an independent contractor in an arm's length contractual relationship with Forever in Peace Hospice Care, Inc. Plaintiff Aguiluz's request for billing records to Forever in Peace Hospice Care, Inc. has gone without response.

24. Plaintiff Aguiluz was not asked to respond to noncompliant denials.

25. Plaintiffs ADRA MD and Oxnard were never a party to any agreement with Forever in Peace Hospice Care, Inc., received no revenue from Forever in Peace Hospice Care, Inc., and had no relationship whatsoever with Forever in Peace Hospice Care, Inc.

***B. Alleged Abused of Billing Privileges***

26. On or about July 29, 2024, National Government Services, a CMS Medicare administrative contractor ("NGS"), notified Forever in Peace Hospice Care, Inc. that effective August 28, 2024, its Medicare enrollment and billing privileges were revoked for violation of 42 CFR § 424.535(a)(8)(ii) – Abuse of Billing Privileges (the "Notice"). Forever in Peace Hospice

Care, Inc. did not provide Plaintiffs with a copy of the Notice.

27. The Notice stated that CMS,

> "has determined that Forever in Peace Hospice Care, Inc. has failed to meet Medicare requirements by submitting noncompliant claims without documentation to support that the services were reasonable or necessary. A review of Forever in Peace Hospice Care, Inc.'s submitted claims was conducted. This review consisted of 6 claims with dates of service from March 30, 2023 through September 30, 2023. Of the 6 claims reviewed, 3 were denied. The reasons for denial were identified as the information provided did not support a terminal prognosis of six months or less. … By letter dated February 13, 2024, Forever in Peace Hospice Care, Inc. was educated regarding the submission of these noncompliant claims."

The denial reasons for those three (3) claims were identical and listed in Enclosure A to that notice as "55H1Y-Physician narrative statement not present or valid. The narrative statement was missing. In addition, documentation does not support terminal prognosis."

28. Defendants did not provide a copy of this Notice to Plaintiffs.

29. On or about November 15, 2024, Defendant Noridian, which like NGS is also a CMS Medicare administrative contractor, notified Plaintiff Aguiluz his Medicare enrollment and billing privileges were revoked effective December 15, 2024, under 42 CFR § 424.535(a)(19) – Affiliation that poses an undue risk.

30. Defendant Noridian also sent substantially identical notices dated November 15, 2024 to Plaintiff Oxnard and Plaintiff ADRA MD because Plaintiff Aguiluz is the qualifying medical doctor who owns or controls those business entities.

31. In the Disclosure of Affiliations sections of those notices, Defendant Noridian falsely claimed Plaintiff Aguiluz was "an individual with managerial control" who "poses an undue risk of fraud, waste, or abuse to the Medicare Program in violation of 42 CFR § 424.519(a)(19)."

32. At no point did Plaintiffs receive any direct communication from Defendants CMS or HHS. Plaintiffs are informed and believe that Defendants CMS, HHS, Mr. Kennedy, and Dr. Oz did not supervise Defendant Noridian as all correspondence and interactions were solely with Defendant Noridian and Defendant Noridian never referenced or mentioned that it was supervised or managed by Defendants CMS, HHS, Mr. Kennedy, and Dr. Oz, or that Defendant Noridian needed to discuss the matter with Defendants CMS, HHS, Mr. Kennedy, and Dr. Oz before

revoking Plaintiff's Medicare enrollment and billing privileges.

33. Plaintiff Aguiluz did not possess any managerial control over Forever in Peace Hospice Care, Inc. He was not a shareholder, director, officer, or employee of Forever in Peace Hospice Care, Inc.

34. Plaintiff Aguiluz was merely an outside consultant or independent contractor.

35. "Disclosure of affiliations," under 42 CFR § 424.519(a)(19), requires Medicare providers to disclose to Defendant CMS any current or past affiliations with another Medicare provider, such as Forever in Peace Hospice Care, Inc., which has had a "disclosable event."

36. Not only was Plaintiff Aguiluz not "an individual with managerial control" of Forever in Peace Hospice Care, Inc., but since these notices dated November 15, 2024 were the first Plaintiffs had heard of any "disclosable event," Plaintiffs could not reasonably have disclosed to Defendant CMS any such information before receiving these notices from Defendant Noridian.

37. The correspondence from NGS and Defendants CMS and Noridian are referred to herein as the "Revocations." Attached as Exhibit "1" is a true and correct copy of these Revocations.

38. Each of the Revocations provided the recipient the "Right to Submit a Reconsideration Request," specifically that Plaintiff Aguiluz "may request a reconsideration of this determination … in writing within 65 calendar days of the date of this letter and mailed or emailed to the address below." In response to the 65-day deadline set forth in Defendant Noridian's letter, on December 10, 2024, Plaintiff Aguiluz submitted to Defendant Noridian a Notice of Intent to Submit a Request for Reconsideration.

39. On December 12, 2024, Plaintiff Aguiluz submitted to Defendant CMS a Preliminary Request for Reconsideration claiming Forever in Peace Hospice Care, Inc. may have submitted claims using his name without his knowledge or permission. He maintained the "revocation of my Medicare Enrollment and Medicare Billing Privileges … not based on any direct action I have personally performed or failed to perform on behalf of any patients" of Forever in Peace Hospice Care, Inc. but merely based on his "affiliation with Forever in Peace Hospice Care, Inc." as an independent contractor or outside consultant.

/ / /

40. In that December 12-letter, Plaintiff Aguiluz notified CMS that he did not own any shares of Forever in Peace Hospice Care, Inc. and did not have "any managerial control over the administration and running of the day-to-day operation" of Forever in Peace Hospice Care, Inc. Despite the honorary title of "Medical Director", Plaintiff Aguiluz was not a director of that corporation, was not a member of its board of directors, and was not an officer or employee of Forever in Peace Hospice Care, Inc. Plaintiff Aguiluz's "main duty as Medical Director is to examine patients and prescribe the care that they need and supervise the care provided them."

41. Plaintiffs are informed and believe that Karen Harutyunyan was the CEO, CFO, Secretary and sole director of Forever in Peace Hospice Care, Inc. in 2023-2024.

42. Plaintiff Aguiluz informed Defendant CMS he "had no hand in the billings for the listed patients and the granted or denied services submitted … [to CMS]."

43. Plaintiff Aguiluz further notified Defendant CMS: "I neither examined those patients nor did I prescribe any treatment plan … to use as basis for the billable claims. Had I examined those patients I would have come up with a diagnosis that they will have a terminal prognosis of 6 months or less or I would not have allowed the submission of those claims where terminal prognosis is over six months in the first place." He stated those claims were filed by Forever in Peace Hospice Care, Inc. "behind my back" without his knowledge, and his "name as medical director may have been used in the submission of the claims but without informing me or consulting me."

44. On December 14, 2024, Plaintiff Aguiluz submitted to Defendant CMS a Request for Reconsideration based on his total lack of ownership, operational, or managerial control of Forever in Peace Hospice Care, Inc.

45. On December 16, 2024, Plaintiff Aguiluz requested from Forever in Peace Hospice Care, Inc. "any/all Progress Notes, Prescriptions, Imaging Results, Lab Results and any/all other documentation signed by Dr. Amable Aguiluz, for all your patients" to be "provided as soon as possible." A copy of this correspondence is attached as Exhibit "2."

46. Forever in Peace Hospice Care, Inc. did not provide any response to Plaintiff. Aguiluz's request.

47. On January 16, 2025, attorneys for Plaintiffs sent to Defendant CMS correspondence entitled "Request for Reconsideration" for each of Plaintiffs Dr. Aguiluz, his Professional Corporation, and Oxnard via FedEx and electronic mail. A copy of this correspondence is attached as Exhibit "3."

48. On January 22, 2025, Jessica Uba, a Health Insurance Specialist employed by Defendant CMS ("Ms. Uba"), emailed attorneys for Plaintiffs, in relevant part, as follows:

> "We are in receipt of your reconsideration request, on behalf of Amable R. Aguiluz Jr and Amable Delos Reyes Aguiluz Jr MD Inc. Please be advised that CMS has 90 days to review your reconsideration request. As stated in the 11/15/24 initial determination letters, Amable R. Aguiluz Jr and Amable Delos Reyes Aguiluz Jr MD Inc's Medicare billing privileges were revoked, and Amable R. Aguiluz Jr and Amable Delos Reyes Aguiluz Jr MD Inc are being added to the CMS Preclusion List. … You may submit additional information/documentation until a decision is issued."

49. Based on the January 22-letter, Defendant CMS was required to provide a response no later than April 22, 2025.

50. On May 6, 2025, attorneys for Plaintiffs emailed Ms. Uba to inquire as to "the status of this matter," namely, the processing by Defendant CMS of Plaintiffs' Requests for Reconsideration.

51. On May 8, 2025, Ms. Uba replied for Defendant CMS, "The appeal submitted for Amable R. Aguiluz Jr and Amable Delos Reyes Aguiluz JR MD INC is still under review. We are working diligently to issue a decision as soon as possible. We will notify once a decision has been made."

52. On September 24, 2025, attorneys for Plaintiffs sent correspondence entitled "Due Process Demands" to Defendant CMS demanding it reverse its determinations on due process grounds for unreasonable delay in violation of Plaintiffs' civil and property rights under the APA and the Fifth Amendment.

53. Defendants failed to respond substantively to Plaintiffs' Due Process Demands.

/ / /

/ / /

/ / /

**FIRST CAUSE OF ACTION**

**(Violation of the Administrative Procedure Act)**

**(As against all Defendants)**

54. Plaintiffs repeat and reallege paragraphs 1 through 53 hereof, as if fully set forth herein.

55. Defendant CMS's failure to issue a decision within ninety (90) days constitutes constructive denial of Plaintiffs' Requests for Reconsideration.

56. This constructive denial, or unreasonably withheld or unreasonably delayed agency action, constitutes a final agency action subject to the Administrative Procedure Act ("APA").

57. Defendants have a clear, nondiscretionary duty under 42 C.F.R. § 498.22(b)(2) to issue a reconsideration decision within ninety (90) days.

58. Defendants' failure to act for more than two hundred forty (240) days constitutes agency action "unlawfully withheld" and "unreasonably delayed" under the APA.

59. The APA further authorizes courts to "hold unlawful and set aside agency action, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law …". 5 U.S.C. § 706(2)(A).

60. An agency action is arbitrary and capricious if the agency has "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

61. The constructive denial is an arbitrary and capricious final agency action. The evidence of its arbitrariness and capriciousness is substantial and irrefutable, including without limitation the following:

(a) Noridian revoked Plaintiffs' Medicare billing privileges based on its fundamental misunderstanding of Dr. Aguiluz's role as a consultant with no ownership or managerial control of Forever in Peace Hospice Care, Inc.;

(b) Plaintiffs had no knowledge of, or even any reason to suspect, any disclosable event until they received Noridian's notice; and

(c) CMS's failure to respond substantively to the facts and arguments set forth in the Requests for Reconsideration for over eight (8) months instead of ninety (90) days as promised.

62. Defendants constructively denied the Requests for Reconsideration without the reasoned or rational explanation required by the APA.

63. The reasons provided by Defendants in their Revocations and any responses to the Requests for Reconsideration are contrived and pretextual or entirely lacking in substance.

64. Pursuant to 5 U.S.C. § 706 and 28 U.S.C. § 2201, Plaintiffs are entitled to a declaration that the Revocations violate the APA because they are arbitrary and capricious.

65. Defendants' constructive denial of Plaintiffs' requests for reconsideration has injured all the Plaintiffs in this action.

66. Plaintiffs lack an adequate remedy at law because they cannot bill Medicare without those billing privileges being restored.

67. By reason of the foregoing, Plaintiffs seek equitable relief in the form of a declaration that Plaintiffs' Requests for Reconsideration are granted, their Medicare billing privileges are restored, and they removed from the CMS Preclusion List, and injunctive relief preventing Defendants from revoking Plaintiffs' Medicare billing privileges without due process of law.

68. Plaintiffs are also entitled to vacatur of the constructive denial and a preliminary and permanent injunction ordering the Secretary to reinstate Plaintiffs as Medicare providers and remove them from the CMS Preclusion List.

**SECOND CAUSE OF ACTION**

**(Violation of the Fifth Amendment)**

**(As against all Defendants)**

69. Plaintiffs repeat and reallege paragraphs 1 through 53, and paragraphs 55 through 68, hereof, as if fully set forth herein.

/ / /

70. Plaintiffs have a protected property interest in continued Medicare enrollment and billing privileges. As stated in Plaintiff Aguiluz's December 12, 2024 reconsideration request to CMS, the revocation of Medicare enrollment and billing privileges has "deprived" him of his "livelihood as a physician" and his "ability to practice such profession" even in his "own clinic, which is separate and distinct from being the medical director" of Forever in Peace Hospice Care, Inc.

71. Defendant CMS has a ministerial duty to act on reconsideration requests in accordance with its regulations.

72. Defendant CMS's indefinite delay in issuing a reconsideration decision deprives Plaintiffs of this property interest without due process of law.

73. Under Matthews v. Eldridge, the balance of interests favors Plaintiffs because:

(a) Plaintiffs' livelihoods are significantly impaired in that since being added to the CMS Preclusion List with Medicare billing privileges revoked, Plaintiffs have been unable lawfully to treat patients insured by Medicare, operate a medical practice consist with prior practice in the ordinary course of business, and have resultantly suffered a significant decrease in income;

(b) The risk of erroneous deprivation is high without a timely hearing;

(c) Defendant CMS's interest in program integrity is not advanced by unreasonable delay.

74. Plaintiffs have no adequate alternative remedy to obtain relief because Plaintiffs have lost profits directly resulting from the revocation of Plaintiff Aguiluz's Medicare enrollment and billing privileges.

75. Declaratory and injunctive relief is appropriate to compel Defendants to restore Plaintiffs' property rights to Medicare billing privileges and provider enrollment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request judgment against Defendants for each of the causes of action raised herein. Plaintiffs respectfully request this Court enter judgment in their favor and the Court:

1. Declare unlawful and set aside the constructive denial of Plaintiffs' Requests for Reconsideration and the Revocations of Plaintiffs' Medicare billing privileges as arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law under the APA; and.

2. Order the restoration of Plaintiffs' Medicare provider billing privileges and remove Plaintiffs from the CMS Preclusion List.

3. Grant Plaintiffs such other and further relief as the Court deems just and proper

Dated: January 14, 2026

COLEMAN & HOROWITT, LLP

By: ______________________

RACHEL M. SPOSATO
JUDITH M. SASAKI
NICHOLAS F. PHILLIPS
Attorney for Plaintiffs, AMABLE AGUILUZ, M.D., AMABLE DELOS REYES AGUILUZ JR, MD. INC., and OXNARD MEDICAL GROUP, INC

## VERIFICATION

I, AMABLE AGUILUZ, M.D., am the plaintiff and CEO of AMABLE DELOS REYES AGUILUZ JR, MD. INC. and OXNARD MEDICAL GROUP, INC in the above-entitled action. I have reviewed the foregoing allegations made in the Verified Complaint, and to those allegations of which I have personal knowledge, I believe them to be true. As to those allegations of which I do not have personal knowledge, and I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on January 12, 2026, at Hawaiian Gardens California

AMABLE AGUILUZ, M.D

# Exhibit 1

national government SERVICES

www.NGSMedicare.com

MEDICARE

Provider Enrollment Part A, PO Box 6474, Indianapolis, IN 46206-6474

July 29, 2024

FOREVER IN PEACE HOSPICE CARE INC
12444 VICTORY BLVD, STE 403
NORTH HOLLYWOOD, CA 91606-3199

Reference # PE[redacted]571, NPI: [redacted]654, PTAN: [redacted]692

Dear FOREVER IN PEACE HOSPICE CARE INC:

Your Medicare enrollment and Medicare billing privileges are being revoked effective August 28, 2024 for the following reasons:

**42 CFR §424.535(a)(8)(ii) - Abuse of Billing Privileges**
The Centers for Medicare & Medicaid Services (CMS) has determined that Forever In Peace Hospice Care, Inc. has engaged in a pattern or practice of submitting claims that fail to meet Medicare requirements, in violation of 42 CFR 424.535(a)(8)(ii). Forever In Peace Hospice Care, Inc. has failed to meet Medicare requirements by submitting noncompliant claims without documentation to support that the services were reasonable or necessary.

A review of Forever In Peace Hospice Care, Inc.'s submitted claims was conducted. This review consisted of 6 claims with dates of service from March 30, 2023 through September 30, 2023. Of the 6 claims reviewed, 3 were denied. The reasons for denial were identified as: the information provided did not support a terminal prognosis of six months or less. The noncompliant billing is reflected on the attachment titled *Enclosure A*. By letter dated February 19, 2024, Forever In Peace Hospice Care, Inc. was educated regarding the submission of these noncompliant claims.

An additional review of Forever In Peace Hospice Care, Inc.'s submitted claims was conducted. This review consisted of 10 claims with dates of service from April 1, 2024 through April 30, 2024. Of the 10 claims reviewed, 8 were denied. The reasons for denial were identified as: the information provided did not support a terminal prognosis of six months or less, and the documentation submitted did not support the services billed. The noncompliant billing is reflected on the attachment titled *Enclosure B*. By letter dated July 19, 2024, Forever In Peace Hospice Care, Inc. was educated regarding the submission of these noncompliant claims.

Forever In Peace Hospice Care, Inc.'s above billing behavior constitutes a violation of 42 CFR 424.535(a)(8)(ii), and therefore, CMS has determined that the provider, "has a

national government SERVICES
www.NGSMedicare.com

MEDICARE

pattern or practice of submitting claims that fail to meet Medicare requirements…"

Pursuant to 42 CFR §424.535(b), this action will also terminate your corresponding provider agreement.

Pursuant to 42 CFR §424.535(c), CMS is establishing a re-enrollment bar for a period of 10 Years that shall begin 30 days after the postmark date of this letter. This re-enrollment bar only applies to your ability to submit a new enrollment application to the Medicare program. In order to re-enroll, you must meet all requirements for your provider or supplier type.

In light of your revocation, you are being added to the CMS Preclusion List. This action is taken pursuant to 42 C.F.R. §§ 422.2 and 422.222 for all providers/suppliers. Additionally, for individuals that are prescribers, such as physicians and non-physician practitioners, this action is also taken pursuant to 42 C.F.R. §§ 423.100 and 423.120(c)(6).

The effective date of your inclusion on the CMS Preclusion List is dependent upon your submission or non-submission of a reconsideration request (see below). If you do submit a reconsideration request and your inclusion on the CMS Preclusion List is upheld, the effective date of your inclusion on the CMS Preclusion List will be the date of the reconsidered decision. If you do not submit a reconsideration request, the effective date of your inclusion on the CMS Preclusion List will be 65 calendar days after the date of this letter.

During the time period that your name will be included on the CMS Preclusion List as listed above, any claims for health care items or services furnished under a Medicare Advantage (MA) benefit submitted by you, or on your behalf by an entity you are employed by, shall be denied. Additionally, if you are a prescriber, any pharmacy claims submitted for Medicare Part D drugs that you prescribe shall be rejected or denied subject to the exception at 42 C.F.R. § 423.120(c)(6)(iv). This means that your patients may not be able to receive coverage of their prescriptions using their Part D benefit at the pharmacy.

If you are or become excluded by the Office of Inspector General (OIG), you will remain on the Preclusion List until the expiration of the CMS-imposed preclusion period or until you are reinstated by OIG, whichever comes later. This action is taken pursuant to 42 C.F.R. § 422.222(a)(5)(iv) and if you are prescriber § 423.120(c)(6)(vii)(D).

Your revocation and placement on the CMS Preclusion List will not negatively impact your Medicare and/or Medicaid benefits as an individual receiving health insurance coverage under either or both programs.

The below appeal rights apply to both your revocation and inclusion on the CMS Preclusion List. If you choose to appeal, you must file an appeal to (1) the revocation and (2) the inclusion on the

national government SERVICES
www.NGSMedicare.com

MEDICARE

CMS Preclusion List jointly.

**Right to Submit a Reconsideration Request:**

You may request a reconsideration of this determination. This is an independent review conducted by a person not involved in the initial determination.

Reconsideration requests must:

- Be received in writing within 65 calendar days of the date of this letter and mailed or emailed to the address below.
- State the issues or findings of fact with which you disagree and the reasons for disagreement.
- Be signed by the provider or supplier, an authorized or delegated official that has been reported within your Medicare enrollment record, or an authorized representative.
  - If the authorized representative is an attorney, the attorney's statement that he or she has the authority to represent the provider or supplier is sufficient to accept this individual as the representative.
  - If the authorized representative is not an attorney, the individual provider, supplier, or authorized or delegated official must file written notice of the appointment of its representative with the submission of the reconsideration request.
  - Authorized or delegated officials for groups cannot sign and submit a reconsideration request on behalf of a reassigned provider/supplier without the provider/supplier submitting a signed statement authorizing that individual from the group to act on his/her behalf.

Providers and suppliers may:

- Submit additional information with the reconsideration that may have a bearing on the decision. However, if you have additional information that you would like a Hearing Officer to consider during the reconsideration or, if necessary, an Administrative Law Judge (ALJ) to consider during a hearing, you must submit that information with your request for reconsideration. This is your only opportunity to submit information during the administrative appeals process unless an ALJ allows additional information to be submitted.
- Include an email address if you want to receive correspondence regarding your appeal via email.

If a reconsideration is not requested, CMS deems this a waiver of all rights to further administrative review. More information regarding appeal rights can be found at 42 C.F.R. Part 498.

The reconsideration should be sent to:

national government SERVICES

www.NGSMedicare.com

MEDICARE

Centers for Medicare & Medicaid Services
Center for Program Integrity
Provider Enrollment & Oversight Group
Attn: Division of Provider Enrollment Appeals
7500 Security Boulevard
Mailstop AR-19-51
Baltimore, MD 21244-1850

Or emailed to: ProviderEnrollmentAppeals@cms.hhs.gov

If you have any questions, please contact our office at 855-834-5596 between the hours of 8:00 AM and 4:00 PM EST, Monday through Friday.

Sincerely,

Danielle Starr
Provider Enrollment Specialist
National Government Services, Inc

**PECOS Web—your ticket to fast, secure, online enrollment https://pecos.cms.hhs.gov**

NPI: 1003401654

Enclosure A

| Claim Control Number | Claim Submission Date | Date of Service From | Date of Service Through | Medicare Beneficiary Identifier | Beneficiary's First Initial, Last Name | Claim Line HCPCS/CPT Code | Denial Reason(s) |
|---|---|---|---|---|---|---|---|
| 22330500256604CAR | 11/01/2023 | 03/30/2023 | 03/31/2023 | [redacted] | C. T[redacted] | Q5001 | 55H1Y- Physician narrative statement not present or valid. The narrative statement was missing. In addition, documentation does not support terminal prognosis. |
| 22331700259104CAR | 11/15/2023 | 04/12/2023 | 04/30/2023 | [redacted] | R. D[redacted] | Q5001 | 55H1Y- Physician narrative statement not present or valid. The narrative statement was missing. In addition, documentation does not support terminal prognosis. |
| 22331700267204CAR | 11/13/2023 | 09/08/2023 | 09/30/2023 | [redacted] | D.[redacted] | Q5001 | 55H1Y- Physician narrative statement not present or valid. The narrative statement was missing. In addition, documentation does not support terminal prognosis. |

[illegible]
NPI: 1003401654
Enclosure B

| Claim Control Number | Claim Submission Date | Date of Service From | Date of Service Through | Medicare Beneficiary Identifier | Beneficiary's First Initial, Last Name | Claim Line HCPCS/CPT Code | Denial Reasons |
|---|---|---|---|---|---|---|---|
| 22412100466104CAR | 04/30/2024 | 04/01/2024 | 04/30/2024 | [redacted] | L. W[redacted] | Q5001 | 55H1L- The information provided does not support a terminal prognosis of 6 months or less. |
| 22412100466504CAR | 04/30/2024 | 04/01/2024 | 04/30/2024 | [redacted] | M. C[redacted] | Q5001 | 55H1L-The information provided does not support a terminal prognosis of 6 months or less. |
| 22412100466704CAR | 04/30/2024 | 04/01/2024 | 04/30/2024 | [redacted] | R. L[redacted] | Q5001 | 55H1L-The information provided does not support a terminal prognosis of 6 months or less. |
| 22412100461204CAR | 04/30/2024 | 04/01/2024 | 04/30/2024 | [redacted] | T. M[redacted] | Q5001 | 55H1L-The information provided does not support a terminal prognosis of 6 months or less. |
| 22412100463404CAR | 04/30/2024 | 04/01/2024 | 04/30/2024 | [redacted] | B. A[redacted] | Q5001 | 55H1L-The information provided does not support a terminal prognosis of 6 months or less. |
| 22412100464604CAR | 04/30/2024 | 04/01/2024 | 04/30/2024 | [redacted] | W. G[redacted] | Q5001 | 55H1L-The information provided does not support a terminal prognosis of 6 months or less. |
| 22412100465304CAR | 04/30/2024 | 04/01/2024 | 04/30/2024 | [redacted] | R. S[redacted] | Q5001 | 55H1L-The information provided does not support a terminal prognosis of 6 months or less. |
| 22417600390108CAR | 06/24/2024 | 04/01/2024 | 04/30/2024 | [redacted] | G. T[redacted] | Q5001 | 55H1K- The documentation submitted did not support the services as billed. |

noridian
Healthcare Solutions

Noridian Healthcare Solutions
4510 13th Ave S., Fargo, ND 58103

November 15, 2024

Oxnard Medical Group Inc
12511 Oxnard St
North Hollywood, CA 91606-4458

Reference: NPI: [redacted]776; PTAN(S): CB[redacted]113 *

Dear Oxnard Medical Group Inc:

Your Medicare enrollment and Medicare billing privileges are being revoked effective December 15, 2024 for the following reasons:

**42 CFR § 424.535(a)(19) - Affiliation that poses an undue risk**

In accordance with 42 CFR §424.519, the Centers for Medicare & Medicaid Services (CMS) has determined that Amable Aguiluz, has or has had an affiliation, as defined in 42 CFR §424.502, that poses an undue risk of fraud, waste, or abuse to the Medicare Program.

Within the last 5 years, Amable Aguiluz was listed as being an individual with managerial control of Forever in Peace Hospice Care, Inc., a previously enrolled Medicare Entity that had a disclosable event. Forever in Peace Hospice Care, Inc.'s Medicare billing privileges were revoked on July 29, 2024 under 42 CFR §424.535(a)(8) Abuse of Billing Privileges. A revocation is considered a disclosable event as defined in 42 CFR §424.502.

After reviewing the undue risk factors outlined in 42 CFR §424.519(f), as applicable, the duration, degree and extent of Amable Aguiluz's affiliation as an individual with managerial control of Forever in Peace Hospice, Inc. and their current role at Oxnard Medical Group, Inc., poses an undue risk of fraud, waste, or abuse to the Medicare Program in violation of 42 CFR §424.519(a)(19).

Please notify all Physician Assistants and/or Group Members who reassign benefits to your organization that in accordance with 42 CFR §424.540(a)(2) their Medicare enrollment status may be deactivated if they fail to update their enrollment record within 90 calendar days.

Pursuant to 42 CFR §424.535(c), CMS is establishing a re-enrollment bar for a period of ten year(s) that shall begin 30 days after the postmark date of this letter. This re-enrollment bar only applies to your ability to submit a new enrollment application to the Medicare program. In order to re-enroll, you must meet all requirements for your provider or supplier type.

In light of your revocation, you are being added to the CMS Preclusion List. This action is taken pursuant to 42 C.F.R. §§ 422.2 and 422.222 for all providers/suppliers. Additionally, for individuals that are prescribers, such as physicians and non-physician practitioners, this action is also taken pursuant to 42 C.F.R. §§ 423.100 and 423.120(c)(6).

The effective date of your inclusion on the CMS Preclusion List is dependent upon your submission or non-submission of a reconsideration request (see below). If you do submit a reconsideration request and your inclusion on the CMS Preclusion List is upheld, the effective date of your inclusion on the CMS Preclusion List will be the date of the reconsidered decision. If you do not submit a reconsideration request, the effective date of your inclusion on the CMS Preclusion List will be 65 calendar days after the date of this letter.

During the time period that your name will be included on the CMS Preclusion List as listed above, any claims for health care items or services furnished under a Medicare Advantage (MA) benefit submitted by you, or on your behalf by an entity you are employed by, shall be denied. Additionally, if you are a prescriber, any pharmacy claims submitted for Medicare Part D drugs that you prescribe shall be rejected or denied subject to the exception at 42 C.F.R. § 423.120(c)(6)(iv). This means that your patients may not be able to receive coverage of their prescriptions using their Part D benefit at the pharmacy.

If you are or become excluded by the Office of Inspector General (OIG), you will remain on the Preclusion List until the expiration of the CMS-imposed preclusion period or until you are reinstated by OIG, whichever comes later. This action is taken pursuant to 42 C.F.R. § 422.222(a)(5)(iv) and if you are prescriber § 423.120(c)(6)(vii)(D).

Your revocation and placement on the CMS Preclusion List will not negatively impact your Medicare and/or Medicaid benefits as an individual receiving health insurance coverage under either or both programs.

The below appeal rights apply to both your revocation and inclusion on the CMS Preclusion List. If you choose to appeal, you **must** file an appeal to (1) the revocation and (2) the inclusion on the CMS Preclusion List jointly.

**Right to Submit a Reconsideration Request:**

You may request a reconsideration of this determination. This is an independent review conducted by a person not involved in the initial determination.

Reconsideration requests must--

- Be received in writing within 65 calendar days of the date of this letter and mailed or emailed to the address below.

ProviderEnrollmentAppeals@cms.hhs.gov

If you have any questions, please contact our office at JE 855-609-9960 between the hours of 8:00 AM and 4:00 PM.

Sincerely,

Cherie A
Business Project Analyst
Provider Enrollment
Noridian Healthcare Solutions

noridian
Healthcare Solutions

Noridian Healthcare Solutions
4510 13th Ave S., Fargo, ND 58103

November 15, 2024

Amable Aguiluz, MD
12511 Oxnard St
North Hollywood, CA 91606-4458

Reference: NPI: [redacted]596; PTAN(S): D[redacted]25A, D[redacted]25Y, D[redacted]25W, D[redacted]25V, CB[redacted]780, CB[redacted]011, CB[redacted]255, CB[redacted]127, CB[redacted]650, CB[redacted]757, CB[redacted]114, CB[redacted]387, CB[redacted]637, CB[redacted]645, CA[redacted]254, CA[redacted]71, CA[redacted]457, CB[redacted]605, CB[redacted]401, CA[redacted]839, CB[redacted]583, CA[redacted]942, CB[redacted]03, CB[redacted]258

Dear Amable Aguiluz, MD:

Your Medicare enrollment and Medicare billing privileges are being revoked effective December 15, 2024 for the following reasons:

**42 CFR § 424.535(a)(19) - Affiliation that poses an undue risk**

In accordance with 42 CFR §424.519, the Centers for Medicare & Medicaid Services (CMS) has determined that Amable Aguiluz has or has had an affiliation, as defined in 42 CFR §424.502, that poses an undue risk of fraud, waste, or abuse to the Medicare Program.

Within the last 5 years, Amable Aguiluz was listed as being an individual with managerial control of Forever in Peace Hospice Care, Inc., a previously enrolled Medicare Entity that had a disclosable event. Forever in Peace Hospice Care, Inc.'s Medicare billing privileges were revoked on July 29, 2024 under 42 CFR §424.535(a)(8) Abuse of Billing Privileges. A revocation is considered a disclosable event as defined in 42 CFR §424.502.

After reviewing the undue risk factors outlined in 42 CFR §424.519(f), as applicable, the duration, degree and extent of Amable Aquiluz's affiliation as being an individual with managerial control and their current 855I enrollment, poses an undue risk of fraud, waste, or abuse to the Medicare Program in violation of 42 CFR §424.519(a)(19).

Pursuant to 42 CFR §424.535(c), CMS is establishing a re-enrollment bar for a period of ten year(s) that shall begin 30 days after the postmark date of this letter. This re-enrollment bar only applies to your ability to submit a new enrollment application to the Medicare program. In order to re-enroll, you must meet all requirements for your provider or supplier type.

In light of your revocation, you are being added to the CMS Preclusion List. This action is taken pursuant to 42 C.F.R. §§ 422.2 and 422.222 for all providers/suppliers. Additionally, for individuals that are prescribers, such as physicians and non-physician practitioners, this action is also taken pursuant to 42 C.F.R. §§

423.100 and 423.120(c)(6).

The effective date of your inclusion on the CMS Preclusion List is dependent upon your submission or non-submission of a reconsideration request (see below). If you do submit a reconsideration request and your inclusion on the CMS Preclusion List is upheld, the effective date of your inclusion on the CMS Preclusion List will be the date of the reconsidered decision. If you do not submit a reconsideration request, the effective date of your inclusion on the CMS Preclusion List will be 65 calendar days after the date of this letter.

During the time period that your name will be included on the CMS Preclusion List as listed above, any claims for health care items or services furnished under a Medicare Advantage (MA) benefit submitted by you, or on your behalf by an entity you are employed by, shall be denied. Additionally, if you are a prescriber, any pharmacy claims submitted for Medicare Part D drugs that you prescribe shall be rejected or denied subject to the exception at 42 C.F.R. § 423.120(c)(6)(iv). This means that your patients may not be able to receive coverage of their prescriptions using their Part D benefit at the pharmacy.

If you are or become excluded by the Office of Inspector General (OIG), you will remain on the Preclusion List until the expiration of the CMS-imposed preclusion period or until you are reinstated by OIG, whichever comes later. This action is taken pursuant to 42 C.F.R. § 422.222(a)(5)(iv) and if you are prescriber § 423.120(c)(6)(vii)(D).

Your revocation and placement on the CMS Preclusion List will not negatively impact your Medicare and/or Medicaid benefits as an individual receiving health insurance coverage under either or both programs.

The below appeal rights apply to both your revocation and inclusion on the CMS Preclusion List. If you choose to appeal, you must file an appeal to (1) the revocation and (2) the inclusion on the CMS Preclusion List jointly.

**Right to Submit a Reconsideration Request:**

You may request a reconsideration of this determination. This is an independent review conducted by a person not involved in the initial determination.

Reconsideration requests must:

- Be received in writing within 65 calendar days of the date of this letter and mailed or emailed to the address below.
- State the issues or findings of fact with which you disagree and the reasons for disagreement.
- Be signed by the provider or supplier, an authorized or delegated official that has been reported within your Medicare enrollment record, or an authorized representative.
    - If the authorized representative is an attorney, the attorney's statement that he or she has the authority to represent the provider or supplier is sufficient to accept this individual as the

representative.
- If the authorized representative is not an attorney, the individual provider, supplier, or authorized or delegated official must file written notice of the appointment of its representative with the submission of the reconsideration request.
- Authorized or delegated officials for groups cannot sign and submit a reconsideration request on behalf of a reassigned provider/supplier without the provider/supplier submitting a signed statement authorizing that individual from the group to act on his/her behalf.

Providers and suppliers may:

- Submit additional information with the reconsideration that may have a bearing on the decision. However, if you have additional information that you would like a Hearing Officer to consider during the reconsideration or, if necessary, an Administrative Law Judge (ALJ) to consider during a hearing, you must submit that information with your request for reconsideration. This is your only opportunity to submit information during the administrative appeals process unless an ALJ allows additional information to be submitted.
- Include an email address if you want to receive correspondence regarding your appeal via email.

You may not appeal, through this process, the merits of any past Medicare revocation or any exclusion by another Federal agency that has resulted in you being placed on the Preclusion List. An appeal of an exclusion must be filed separately with the Federal agency that took the action.

If a reconsideration is not requested, CMS deems this a waiver of all rights to further administrative review. More information regarding appeal rights can be found at 42 C.F.R. Part 498.

The reconsideration should be sent to:

Centers for Medicare & Medicaid Services
Center for Program Integrity
Provider Enrollment & Oversight Group
ATTN: Division of Provider Enrollment Appeals
7500 Security Boulevard
Mailstop: AR-19-51
Baltimore, MD 21244-1850

Or emailed to:
ProviderEnrollmentAppeals@cms.hhs.gov

If you have any questions, please contact our office at JE 855-609-9960 between the hours of 8:00 AM and 4:00 PM.

Sincerely,

CMS

Candace C
Enrollment Representative
Provider Enrollment
Noridian Healthcare Solutions

NORIDIAN HEALTHCARE SOLUTIONS
ATTN: PROVIDER ENROLLMENT
PO BOX 6715
FARGO ND 58108-6715

USPS CERTIFIED MAIL

9214 8901 9403 8388 4646 18

AMABLE AGUILUZ MD
12511 OXNARD ST
N HOLLYWOOD CA 91606-4458

Fold Here

Fold Here

# EXHIBIT 2

*Amable R. Aguiluz Jr., M.D. Inc*
*DBA Hawaiian Gardens Walk-in Urgent Care*
*21500 S. Pioneer Blvd, Ste. 209*
*Hawaiian Gardens, Ca 90716*
*Office (562) 860-2442*
*Fax (562) 860-9015*

12/16/2024

Forever in Peace Hospice Care, Inc.
12444 Victory Blvd.,.Ste. 403
North Hollywood, Ca 91606

To Whom It May Concern,

Dr. Amable Aguiluz is requesting any/all Progress Notes, Prescriptions, Imaging Results, Lab Results and any/all other documentation signed by Dr. Amable Aguiluz, for all of your patients.

Dr. Aguiluz is requesting this information be provided as soon as possible.

We would appreciate confirmation, in writing, of this request to draguiluzoffice@gmail.com

You may contact me at the above email or at (562) 860-2442 with any concerns. We thank you for your prompt attention to this request.

Sincerely

Amable Aguiluz M.D.

# EXHIBIT 3

William H. Coleman (Ret.)
Darryl J. Horowitt
David J. Weiland
Gregory J. Norys
Eliot S. Nahigian[1]
Sheryl D. Noel
Judith M. Sasaki
Stacy H. Bowman
C. Fredrick Meine III, APC[2]
Sherrie M. Flynn[3]
Michael P. Dowling
Jennifer T. Poochigian

[1]Certified Specialist: taxation law, estate planning, trust and probate law
[2]A Professional Corporation Licensed in California and Washington
[3]Registered Patent Attorney

COLEMAN & HOROWITT, LLP

Attorneys at Law

1901 Avenue of the Stars, 2nd Floor
Los Angeles, California 90067
Telephone: (310) 286-0233
Web: www.ch-law.com

Steven C. Clark
Robert K. Ashley
Justin K. Romig
Jared R. Clemence
[3,4]Aisha O. Otori
Herman S. Chatrath
[5]Nicholas F. Phillips
Adrianna G. Martinez
Caz C. Ashjian
Matthew R. Nutting
Gary S. Shuster
Daniel L. Rudnick

[4] Licensed in California & Illinois
[5] Licensed in California, Oregon Minnesota & Illinois

Writer's E-Mail
jsasaki@ch-law.com

January 16, 2025

**Via FEDX # 771486126961**
**Electronic Mail to: ProviderEnrollmentAppeals@cms.hhs.gov**
Centers for Medicare & Medicaid Services
Center for Program Integrity
Provider Enrollment & Oversight Group
Attn: Division of Provider Enrollment Appeals
7500 Security Boulevard
Mailstop: AR-19-51
Balitmore, MD 21244-1850

Re: **Amable De Los Reyes Aguiluz Jr., M.D., Inc.'s Response to November 15, 2024, Notice of Revocation**
**REQUEST FOR RECONSDIERATION**
Reference: NPI:[redacted]380; PTAN(S): CB[redacted]104

Dear Cherie,

This Reconsideration Request is written in response to a November 15, 2024, Notice of Revocation from Noridian Healthcare Solutions ("Noridian"). On November 15, 2024, three separate notices of revocation were sent by Noridian: one directed to Dr. Aguiluz personally, a second to his professional corporation, and a third to Oxnard Medical Group Inc. (collectively the "Noridian Notices"). [Decl. of Dr. Aguiluz, ¶24] All three Notices are essentially identical and involve Forever In Peace Hospice, Inc.

November 15, 2024, was the first Dr. Aguiluz had heard of any issue relating to improper Medicare billing and collections. [Decl. of Dr. Aguiluz, ¶24] Each of the Noridian Notices informed Dr. Aguiluz in bold print that he has a "Right to Submit a Reconsideration Request" which must be received "within 65 calendar days of the date of this letter." 65



Primerus Member

days from November 15, 2024, is Sunday, January 19, 2025. Accordingly, the following is a timely submission of a Request For Reconsideration.[1]

**BACKGROUND AND PROCEDURAL HISTORY**

A. Dr. Amable Aguiluz

Dr. Amable Aguiluz ("Dr. Aguiluz") is a California resident and has been a citizen of the United States since 1974. [Decl. of Dr. Aguiluz, Exh.1] He practices general and urgent care medicine and earned his medical degree from University of the East Ramon Magsaysay Memorial Center, College of Medicine in the Philippines in 1975. [Decl. of Dr. Aguiluz, Exh.2 ] Thereafter, he completed his internship in Michigan at Highland Park General Hospital in 1975 and his residency in Michigan at St. John Providence Hospital. [Decl. of Dr. Aguiluz, Exh.3] Dr. Aguiluz is a veteran who served as a medical officer in the United States Navy from 1977 to 1980. [Decl. of Dr. Aguiluz, Exh.4]

Following his actions as a military officer in the US Navy, Dr. Aguiluz has been practicing medicine for over forty years, from 1980 to date. Dr. Aguiluz operates his practice through his professional corporation known as Amable Delos Reyes Aguiluz DR MD, which was established in November 2011, and which is in good standing with the California Secretary of State. From 2000 to date, Dr. Aguiluz's medical practice is located at 21500 Pioneer Boulevard, Suite 309, Hawaiian Gardens, CA 90716-2605. Dr. Aguiluz has a physical office space at the Pioneer Boulevard address and operates out of that address full-time.

Dr. Aguiluz is also part of the Oxnard Medical Group which was created in May 2019, currently doing business at 12511 Oxnard Street, North Hollywood, California 91606, and which is in good standing with the California Secretary of State. Meetings relating to staff and other issues of the business of Oxnard Medical Group were held at the 112511 Oxnard Street, North Hollywood, California 91606 address. [Decl. of Dr. Aguiluz, ¶4]

**FOREVER IN PEACE HOSPICE CARE, INC.**

Dr Aguiluz does not have and has never had any direct or indirect ownership in Forever In Peace Hospice Care, Inc. In fact, Dr. Aguiluz does not know who or what entity has or may have had any such ownership in Forever In Peace Hospice Care, Inc., either directly or indirectly. [Decl. of Dr. Aguiluz, ¶5]

---

1 As three separate Noridian Notices were sent, each entity will submit a separate Request For Reconsideration.

Dr. Aguiluz does not have and has never had any entitlement to profits generated by Forever In Peace Hospice Care, Inc. [Decl. of Dr. Aguiluz, ¶6. Dr. Aguiluz does not have and has never had any access or privileges to Forever In Peace Hospice Care, Inc.'s account(s) or monetary source(s) of any kind. He also does not have any authority to bind Forever In Peace Hospice Care, Inc. to any contract, oral or written. [Decl. of Dr. Aguiluz, ¶6]

Dr. Aguiluz does not have and has never had any managerial control of Forever In Peace Hospice Care, Inc. [Decl. of Dr. Aguiluz, ¶7.] He does not have contact or oversight responsibility for staff or patients. [Decl. of Dr. Aguiluz, ¶1] Dr. Aguiluz does not have and have never had any interest in any entity that exercises operational or managerial control directly or indirectly or that conducts the day-today operations of Forever In Peace Hospice Care, Inc. [Decl. of Dr. Aguiluz, ¶7] In fact, he does not know who or what entity exercises operational or managerial control directly or indirectly that conducts the day-today operations of Forever In Peace Hospice Care, Inc. [Id. at ¶7]

Dr. Aguiluz does not have an office at, nor has he ever had an office at any Forever In Peace Hospice Care, Inc. location or place of business, including its 12444 Victory Blvd. Suite 403, office. He never received any mail or directed that any mail be sent to him at any Forever In Peace Hospice Care, Inc. location, including its 12444 Victory Blvd. Suite 403 office. He did not review or have access to incoming mail sent to Forever In Peace Hospice Care, Inc. [Decl. of Dr. Aguiluz, ¶8]

Dr. Aguiluz did not conduct business at any Forever In Peace Hospice Care, Inc. location. As more specifically described below, the limited tasks he performed independently for Forever In Peace Hospice Care, Inc. were performed off-site. [Decl. of Dr. Aguiluz, ¶9] Dr. Aguiluz is not and has never been an employee of Forever In Peace Hospice Care, Inc. or served on its Board of Directors or functioned in any executive or managerial capacity. He has never received a W-2 wage and tax statement from Forever In Peace Hospice Care, Inc. and has no entitlement to coverage of business expenses, vacation, sick leave or either benefits. [Decl. of Dr. Aguiluz, ¶10]

Dr. Aguiluz has no reassignment relationship with Forever In Peace Hospice Care, Inc., through which he could or ever expected to receive any portion of Medicare payments made to Forever In Peace Hospice Care, Inc. Dr. Aguiluz did not receive any portion of Medicare payments made to Forever In Peace Hospice Care, Inc. [Decl. of Dr. Aguiluz, ¶11]

Neither Dr. Aguiluz nor his company, Amable Delo Reyes Aguiluz DR MD, Inc. ever provided any billing and collection services to Forever In Peace Hospice Care, Inc. He was never provided with or reviewed or created any billing or collection records relating to Forever In Peace Hospice Care, Inc. [Decl. of Dr. Aguiluz, ¶12]

**THE LIMITED INDEPENDENT RELATIONSHIP WITH FOREVER IN PEACE HOSPICE CARE, INC.**

Dr. Aguiluz became aware of Forever in Peace Hospice Care, Inc. when it was referred to him in 2023. Forever in Peace Hospice Care, Inc., was looking for a physician to work as an outside consultant who could oversee incoming referrals by reviewing patients' medical records to determine whether the respective patient's condition qualifies the patient for hospice. [Decl. of Dr. Aguiluz, ¶14] In or about 2023, he agreed to provide consulting services for a monthly fee of $500. He never met with patients directly or provided any other service to Peace Hospice Care, Inc. [Id.]

Medical records were delivered to the Oxnard Medical Group office located at 12511 Oxnard Street, North Hollywood, California 91606 address, by a representative of Forever In Peace Hospice Care, Inc. for Dr. Aguiluz to review. Thereafter the files were picked up by Forever In Peace Hospice Care, Inc. at Dr. Aguiluz's Oxnard address. Dr. Aguiluz did not review records at any Peace Hospice Care Center. [Decl. of Dr. Aguiluz, ¶15]

1. **The Alleged Misconduct**

Dr. Aguiluz had nothing to gain from Medicare billing or collections by In Peace Hospice Care, Inc., one way or the another and his consulting fee was not tied to a finding of qualification one way or another. Dr. Aguiluz was not asked to respond to noncompliant denials. [Decl. of Dr. Aguiluz, ¶16] Dr. Aguiluz's request for billing records to Forever In Peace Hospice Care, Inc [Decl. of Dr. Aguiluz, Exh. 6] has gone unresponded. Also, Forever In Peace Hospice Care, Inc has kept the Notices from Dr. Aguiluz, which suggests that it has its own agenda and feels no obligation to me.

**THE ABSOLUTE LACK OF DUE PROCESS**

Dr. Aguiluz's Medicare enrollment privilege was revoked based on communications between National Government Services ["NGS"] and Forever In Peace Hospice Care, Inc. completely without his knowledge of the claim or any verified input on his behalf. Again, as soon as he became aware of the NGS Notice, Dr. Aguiluz requested that Forever In Peace Hospice Care, Inc., provide him with any and all documents and information relating to the revocation (if any) but have received no response. [Decl. of Dr. Aguiluz, ¶19. Exh. 6] Dr. Aguiluz was never provided the requested documents and as such, was never given a fair opportunity to defend himself.

1. **The July 24 2024 Notice Of Revocation From National Government Services To Forever In Peace Hospice Care, Inc.**

The July 24, 2024, Notice of Revocation to Forever In Peace Hospice Care, Inc. sent by National Government Services (the "July 24, 2024 Notice") was addressed only to the Forever In Peace Hospice Care, Inc. and mailed to its 12444 Victory Blvd. Suite 403 location. The July 24, 2024, Notice was never sent to Dr. Aguiluz at any of his known and registered personal or business addresses. [Decl. of Dr. Aguiluz, ¶20] Again, he never had an office at nor received any mail at Forever In Peace Hospice Care, Inc. including its 12444 Victory Blvd. Suite 403 – or elsewhere.

No one at Forever In Peace Hospice Care, Inc. or otherwise advised Dr. Aguiluz of the existence of the July 24, 2024 Notice or provided him with a copy. He saw the July 29, 2024, Notice for the first time when it was sent in the November 15, 2024 Notice Letter.

2. **The Initial Determination Letter dated September 20, 2024**

Dr. Aguiluz learned for the first time by a letter to him dated December 24, 2024, from Noridian Healthcare Solutions that a "initial determination letter" dated September 20, 2024, had been issued by Noridian. [Decl. of Dr. Aguiluz ¶22, Exh. 7] He did not receive and, to date has no knowledge of the September 20, 2024, initial determination letter sent by Noridian. Without any such knowledge or information Dr. Aguiluz was not in a position to respond and was denied due process. [Decl. of Dr. Aguiluz, ¶22]

3. **The October 1, 2024 Reconsideration Request**

Dr. Aguiluz also learned (for the first time by the December 24, 2024, letter) that a "reconsideration request" dated October 1, 2024 was received by Noridian. He had no knowledge of the October 1, 2024, reconsideration request and had no part in its preparation or submission. Again, he was excluded from and denied due process. [Decl. of Dr. Aguiluz, ¶23]

**THE NOVEMBER 15, 2024 NOTICES OF REVOCATION FROM NORIDIAN HEALTHCARE SOLUTIONS TO DR. AGUILUZ AND HIS PROFESSIONAL CORPORATION**

On November 15, 2024, Dr. Aguiluz received three notices of revocation from Noridian Healthcare Solutions: one directed to him personally, a second to his professional corporation, and a third to Oxnard Medical Group Inc. (collectively the "Noridian Notices"). [Decl. of Dr. Aguiluz, ¶24] This was the first Dr. Aguiluz had heard of any issue relating to improper Medicare billing and collections. [Decl. of Dr. Aguiluz, ¶24]

Each of the Noridian Notices informed Dr. Aguiluz in bold print that he has a "Right to Submit a Reconsideration Request" which must be received "within 65 calendar days of the date of this letter." 65 days from November 15, 2024, is Sunday, January 19, 2025. Dr. Aguiluz set his sights on this deadline and sought to retain counsel to assist him with this effort. In the meantime, on December 10, 2024, he sent a letter to Noridian confirming receipt of the Noridian Notices and advising Noridian of my intent to submit a Request for Reconsideration. [Decl. of Dr. Aguiluz, ¶26, Exh. 8] Dr. Aguiluz was and remains deeply distressed and concerned about the actions alleged in the Notices as, up until November 15, 2024, he had no knowledge of any alleged wrongdoing by Forever In Peace Hospice Care, Inc. [Decl. of Dr. Aguiluz, ¶26]

On December 12, Dr. Aguiluz was still working to find counsel, and sent a "Preliminary Request for Reconsideration" in which he made it clear that I may provide supplemental information and documents – before the January 19, deadline. [Decl. of Dr. Aguiluz, ¶27]

**NOTICE FROM NORIDIAN ON CHRISTMAS EVE 2024 THAT HIS REQUEST FOR RECONSIDERATION WILL NOT BE CONSIDERED**

As mentioned previously, on December 24, 2024, Dr. Aguiluz received a letter from Noridian responding to an October 1, 2024 reconsideration request **that he did not make and had never seen -- and took no part in preparing** and which is based on a "initial determination letter" from Noridian dated September 20, 2024 **that he has also never seen to this day.** [Decl. of Dr. Aguiluz, ¶28]

In its December 24, 2024, letter, Noridian states that "Noridian has identified that Amable Aguiluz's Medicare enrollment is currently in a revoked status under C.F.R. §424.535(a)(19). Due to the enrollment's status, any issues concerning the provider's reassignments cannot be addressed and Noridian is unable to render a decision in the matter."

It appears that actions taken in conjunction with national government services July 24, 2024, Notice – completely without Dr. Aguiluz's knowledge or input have corrupted his ability to proceed with a fair administrative reconsideration here. That is grossly fair, and particularly harsh, since his reputation and livelihood is at stake, and Noridian gave multiple written notices to him that the deadline for reconsideration submission is January 19, 2024.

**THERE IS NO BASIS FOR CMS OR ITS CONTRACTOR TO REVOKE DR. AGUILUZ'S MEDICARE ENROLLMENT AND BILLING PRIVILEGES**

1. **Dr. Aguiluz did Not Have "Managerial Control" of Forever In Peace Hospice Care, Inc.**

CMS or its contractor may revoke a supplier's Medicare enrollment and billing privileges for any of the reasons stated in 42 C.F.R. § 424535(A). In this matter, CMS has relied on subsection 424.535(a)(19) – Affiliation that poses an undue risk -- which provides for revocation when "CMS determines that the provider or supplier has or had an affiliation under §424.519 that poses an undue risk of fraud waste, or abuse to the Medicare program."

According to the Noridian Notices, Amable Aguiluz "was listed as being an individual with managerial control of Forever in Peace Hospice Care, Inc." It is not stated who made this listing. The fact is that Dr. Aguiluz did not have managerial control and has never identified or characterized himself to any governmental authority or otherwise, as having "managerial control" of Forever In Peace Hospice Care, Inc. (nor has he ever characterized himself in the course of his practice as having managerial control of Forever In Peace Hospice Care, Inc.). [Decl. of Dr. Aguiluz, ¶7]

2. **Independent Services Provided To Forever In Peace Hospice Care, Inc. By Dr. Aguiluz Created No Undue Risk Of Fraud, Waste, Or Abuse**

According to the Noridian Notices, Medicare Enrollment and Medicare billing privileges are subject to revocation because CMS "has determined that Dr. Aguiluz had an "affiliation" as defined in 42 CFR§424.502.

CMS determines whether any of the disclosed affiliations poses an undue risk of fraud, waste, or abuse by considering the following factors: After each factor listed, the facts relating to Dr. Amable and Forever In Peace Hospice Care, Inc. are inserted in brackets in bold type.

(1) The duration of the affiliation.

[**Dr. Aguiluz: less than a year, approximately four months at $500 flat fee/month]**

(2) Whether the affiliation still exists and, if not, how long ago it ended.

[**Dr. Aguiluz: No. Forever in Peace unilaterally stopped sending records for review in mid-2024]**

(3) The degree and extent of the affiliation.

[**Dr. Aguiluz: Dr. Aguiluz has no and has never had any interest or holdings in Forever In Peace Hospice Care, Inc., not an employee, no entitlement to profits, Medicare claims not relevant to fee**]

(4) If applicable, the reason for the termination of the affiliation.

[**Dr. Aguiluz: Not applicable**]

(5) Regarding the affiliated provider's or supplier's disclosable event under paragraph (b) of this section:

(i) The type of disclosable event.

[**Dr. Aguiluz: Apparently action against Dr. Aguiluz are related the July 2024 Notice of Revocation of Forever In Peace Hospice Care, Inc.'s Medicare billing privileges**]

(ii) When the disclosable event occurred or was imposed.

[**Dr. Aguiluz: Dr. Aguiluz does not know – not involved in process**]

(iii) Whether the affiliation existed when the disclosable event occurred or was imposed.

[**Dr. Aguiluz: No**.]

(iv) If the disclosable event is an uncollected debt:

**[Dr. Aguiluz: No.]**

(A) The amount of the debt.

[**Not applicable**]

(B) Whether the affiliated provider or supplier is repaying the debt.

[**Not applicable**]

(C) To whom the debt is owed.

**[Not applicable]**

(v) If a denial, revocation, termination, exclusion, or payment suspension is involved, the reason for the disclosable event.

[**Unknown to Dr. Aguiluz**]

(6) Any other evidence that CMS deems relevant to its determination.

In retrospect Dr. Aguiluz's decision to act as an outside consultant for Forever In Peace Hospice Care, Inc. may have been ill advised. However, Dr. Aguiluz's involvement with for Forever In Peace Hospice Care, Inc. does not rise to a "Affiliation" for purposes of applying §424.419. Dr. Aguiluz simply never had or exercised any managerial or operational control over Forever In Peace Hospice Care, Inc. Any labeling of Dr. Aguiluz by Forever In Peace Hospice Care, Inc. labeled him as a "managing director" is not relevant because he had no such authority as a matter of fact.

As such the Notice of Revocation and any Revocation Order instituted without appropriate notice should be set aside.

Very truly yours,

COLEMAN & HOROWITT, LLP

*/s/ Judith M. Sasaki*

JUDITH M. SASAKI

JMS/arm
Enclosures

COLEMAN & HOROWITT, LLP

ATTORNEYS AT LAW

1901 AVENUE OF THE STARS, 2ND FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: (310) 286-0233
WEB: WWW.CH-LAW.COM

WILLIAM H. COLEMAN (RET.)
DARRYL J. HOROWITT
DAVID J. WEILAND
GREGORY J. NORYS
ELIOT S. NAHIGIAN[1]
SHERYL D. NOEL
JUDITH M. SASAKI
STACY H. BOWMAN
C. FREDRICK MEINE III, APC[2]
SHERRIE M. FLYNN[3]
MICHAEL P. DOWLING
JENNIFER T. POOCHIGIAN

[1]CERTIFIED SPECIALIST: TAXATION LAW, ESTATE PLANNING, TRUST AND PROBATE LAW
[2]A PROFESSIONAL CORPORATION LICENSED IN CALIFORNIA AND WASHINGTON
[3]REGISTERED PATENT ATTORNEY

STEVEN C. CLARK
ROBERT K. ASHLEY
JUSTIN K. ROMIG
JARED R. CLEMENCE
[3,4]AISHA O. OTORI
HERMAN S. CHATRATH
[5]NICHOLAS F. PHILLIPS
ADRIANNA G. MARTINEZ
CAZ C. ASHJIAN
MATTHEW R. NUTTING
GARY S. SHUSTER
DANIEL L. RUDNICK

[4] LICENSED IN CALIFORNIA & ILLINOIS
[5] LICENSED IN CALIFORNIA, OREGON MINNESOTA & ILLINOIS

WRITER'S E-MAIL
JSASAKI@CH-LAW.COM

January 16, 2025

**Via FEDX # 771486126961**
**Electronic Mail to: ProviderEnrollmentAppeals@cms.hhs.gov**
Centers for Medicare & Medicaid Services
Center for Program Integrity
Provider Enrollment & Oversight Group
Attn: Division of Provider Enrollment Appeals
7500 Security Boulevard
Mailstop: AR-19-51
Balitmore, MD 21244-1850

Re: **Oxnard Medical Group, Inc Response to November 15, 2024, Notice of Revocation**
**REQUEST FOR RECONSDIERATION**
Reference: NPI:[redacted]776; PTAN(S): CB[redacted]113

Dear Cherie,

This Reconsideration Request is written in response to a November 15, 2024, Notice of Revocation from Noridian Healthcare Solutions ("Noridian"). On November 15, 2024, three separate notices of revocation were sent by Noridian: one directed to Dr. Aguiluz personally, a second to his professional corporation, and a third to Oxnard Medical Group Inc. (collectively the "Noridian Notices"). [Decl. of Dr. Aguiluz, ¶24] All three Notices are essentially identical and involve Forever In Peace Hospice, Inc.

November 15, 2024, was the first Dr. Aguiluz had heard of any issue relating to improper Medicare billing and collections. [Decl. of Dr. Aguiluz, ¶24] Each of the Noridian Notices informed Dr. Aguiluz in bold print that he has a "Right to Submit a Reconsideration Request" which must be received "within 65 calendar days of the date of this letter." 65

days from November 15, 2024, is Sunday, January 19, 2025. Accordingly, the following is a timely submission of a Request For Reconsideration.[1]

**BACKGROUND AND PROCEDURAL HISTORY**

A. Dr. Amable Aguiluz

Dr. Amable Aguiluz ("Dr. Aguiluz") is a California resident and has been a citizen of the United States since 1974. [Decl. of Dr. Aguiluz, Exh.1] He practices general and urgent care medicine and earned his medical degree from University of the East Ramon Magsaysay Memorial Center, College of Medicine in the Philippines in 1975. [Decl. of Dr. Aguiluz, Exh.2 ] Thereafter, he completed his internship in Michigan at Highland Park General Hospital in 1975 and his residency in Michigan at St. John Providence Hospital. [Decl. of Dr. Aguiluz, Exh.3] Dr. Aguiluz is a veteran who served as a medical officer in the United States Navy from 1977 to 1980. [Decl. of Dr. Aguiluz, Exh.4]

Following his actions as a military officer in the US Navy, Dr. Aguiluz has been practicing medicine for over forty years, from 1980 to date. Dr. Aguiluz operates his practice through his professional corporation known as Amable Delos Reyes Aguiluz DR MD, which was established in November 2011, and which is in good standing with the California Secretary of State. From 2000 to date, Dr. Aguiluz's medical practice is located at 21500 Pioneer Boulevard, Suite 309, Hawaiian Gardens, CA 90716-2605. Dr. Aguiluz has a physical office space at the Pioneer Boulevard address and operates out of that address full-time.

Dr. Aguiluz is also part of the Oxnard Medical Group which was created in May 2019, currently doing business at 12511 Oxnard Street, North Hollywood, California 91606, and which is in good standing with the California Secretary of State. Meetings relating to staff and other issues of the business of Oxnard Medical Group were held at the 112511 Oxnard Street, North Hollywood, California 91606 address. [Decl. of Dr. Aguiluz, ¶4]

**FOREVER IN PEACE HOSPICE CARE, INC.**

Dr Aguiluz does not have and has never had any direct or indirect ownership in Forever In Peace Hospice Care, Inc. In fact, Dr. Aguiluz does not know who or what entity has or may have had any such ownership in Forever In Peace Hospice Care, Inc., either directly or indirectly. [Decl. of Dr. Aguiluz, ¶5]

---

1 As three separate Noridian Notices were sent, each entity will submit a separate Request For Reconsideration.

Dr. Aguiluz does not have and has never had any entitlement to profits generated by Forever In Peace Hospice Care, Inc. [Decl. of Dr. Aguiluz, ¶6. Dr. Aguiluz does not have and has never had any access or privileges to Forever In Peace Hospice Care, Inc.'s account(s) or monetary source(s) of any kind. He also does not have any authority to bind Forever In Peace Hospice Care, Inc. to any contract, oral or written. [Decl. of Dr. Aguiluz, ¶6]

Dr. Aguiluz does not have and has never had any managerial control of Forever In Peace Hospice Care, Inc. [Decl. of Dr. Aguiluz, ¶7.] He does not have contact or oversight responsibility for staff or patients. [Decl. of Dr. Aguiluz, ¶1] Dr. Aguiluz does not have and have never had any interest in any entity that exercises operational or managerial control directly or indirectly or that conducts the day-today operations of Forever In Peace Hospice Care, Inc. [Decl. of Dr. Aguiluz, ¶7] In fact, he does not know who or what entity exercises operational or managerial control directly or indirectly that conducts the day-today operations of Forever In Peace Hospice Care, Inc. [Id. at ¶7]

Dr. Aguiluz does not have an office at, nor has he ever had an office at any Forever In Peace Hospice Care, Inc. location or place of business, including its 12444 Victory Blvd. Suite 403, office. He never received any mail or directed that any mail be sent to him at any Forever In Peace Hospice Care, Inc. location, including its 12444 Victory Blvd. Suite 403 office. He did not review or have access to incoming mail sent to Forever In Peace Hospice Care, Inc. [Decl. of Dr. Aguiluz, ¶8]

Dr. Aguiluz did not conduct business at any Forever In Peace Hospice Care, Inc. location. As more specifically described below, the limited tasks he performed independently for Forever In Peace Hospice Care, Inc. were performed off-site. [Decl. of Dr. Aguiluz, ¶9] Dr. Aguiluz is not and has never been an employee of Forever In Peace Hospice Care, Inc. or served on its Board of Directors or functioned in any executive or managerial capacity. He has never received a W-2 wage and tax statement from Forever In Peace Hospice Care, Inc. and has no entitlement to coverage of business expenses, vacation, sick leave or either benefits. [Decl. of Dr. Aguiluz, ¶10]

Dr. Aguiluz has no reassignment relationship with Forever In Peace Hospice Care, Inc., through which he could or ever expected to receive any portion of Medicare payments made to Forever In Peace Hospice Care, Inc. Dr. Aguiluz did not receive any portion of Medicare payments made to Forever In Peace Hospice Care, Inc. [Decl. of Dr. Aguiluz, ¶11]

Neither Dr. Aguiluz nor his company, Amable Delo Reyes Aguiluz DR MD, Inc. ever provided any billing and collection services to Forever In Peace Hospice Care, Inc. He was never provided with or reviewed or created any billing or collection records relating to Forever In Peace Hospice Care, Inc. [Decl. of Dr. Aguiluz, ¶12]

**THE LIMITED INDEPENDENT RELATIONSHIP WITH FOREVER IN PEACE HOSPICE CARE, INC.**

Dr. Aguiluz became aware of Forever in Peace Hospice Care, Inc. when it was referred to him in 2023. Forever in Peace Hospice Care, Inc., was looking for a physician to work as an outside consultant who could oversee incoming referrals by reviewing patients' medical records to determine whether the respective patient's condition qualifies the patient for hospice. [Decl. of Dr. Aguiluz, ¶14] In or about 2023, he agreed to provide consulting services for a monthly fee of $500. He never met with patients directly or provided any other service to Peace Hospice Care, Inc. [Id.]

Medical records were delivered to the Oxnard Medical Group office located at 12511 Oxnard Street, North Hollywood, California 91606 address, by a representative of Forever In Peace Hospice Care, Inc. for Dr. Aguiluz to review. Thereafter the files were picked up by Forever In Peace Hospice Care, Inc. at Dr. Aguiluz's Oxnard address. Dr. Aguiluz did not review records at any Peace Hospice Care Center. [Decl. of Dr. Aguiluz, ¶15]

1. **The Alleged Misconduct**

Dr. Aguiluz had nothing to gain from Medicare billing or collections by In Peace Hospice Care, Inc., one way or the another and his consulting fee was not tied to a finding of qualification one way or another. Dr. Aguiluz was not asked to respond to noncompliant denials. [Decl. of Dr. Aguiluz, ¶16] Dr. Aguiluz's request for billing records to Forever In Peace Hospice Care, Inc [Decl. of Dr. Aguiluz, Exh. 6] has gone unresponded. Also, Forever In Peace Hospice Care, Inc has kept the Notices from Dr. Aguiluz, which suggests that it has its own agenda and feels no obligation to me.

**THE ABSOLUTE LACK OF DUE PROCESS**

Dr. Aguiluz's Medicare enrollment privilege was revoked based on communications between National Government Services ["NGS"] and Forever In Peace Hospice Care, Inc. completely without his knowledge of the claim or any verified input on his behalf. Again, as soon as he became aware of the NGS Notice, Dr. Aguiluz requested that Forever In Peace Hospice Care, Inc., provide him with any and all documents and information relating to the revocation (if any) but have received no response. [Decl. of Dr. Aguiluz, ¶19. Exh. 6] Dr. Aguiluz was never provided the requested documents and as such, was never given a fair opportunity to defend himself.

1. **The July 24 2024 Notice Of Revocation From National Government Services To Forever In Peace Hospice Care, Inc.**

The July 24, 2024, Notice of Revocation to Forever In Peace Hospice Care, Inc. sent by National Government Services (the "July 24, 2024 Notice") was addressed only to the Forever In Peace Hospice Care, Inc. and mailed to its 12444 Victory Blvd. Suite 403 location. The July 24, 2024, Notice was never sent to Dr. Aguiluz at any of his known and registered personal or business addresses. [Decl. of Dr. Aguiluz, ¶20] Again, he never had an office at nor received any mail at Forever In Peace Hospice Care, Inc. including its 12444 Victory Blvd. Suite 403 – or elsewhere.

No one at Forever In Peace Hospice Care, Inc. or otherwise advised Dr. Aguiluz of the existence of the July 24, 2024 Notice or provided him with a copy. He saw the July 29, 2024, Notice for the first time when it was sent in the November 15, 2024 Notice Letter.

2. **The Initial Determination Letter dated September 20, 2024**

Dr. Aguiluz learned for the first time by a letter to him dated December 24, 2024, from Noridian Healthcare Solutions that a "initial determination letter" dated September 20, 2024, had been issued by Noridian. [Decl. of Dr. Aguiluz ¶22, Exh. 7] He did not receive and, to date has no knowledge of the September 20, 2024, initial determination letter sent by Noridian. Without any such knowledge or information Dr. Aguiluz was not in a position to respond and was denied due process. [Decl. of Dr. Aguiluz, ¶22]

3. **The October 1, 2024 Reconsideration Request**

Dr. Aguiluz also learned (for the first time by the December 24, 2024, letter) that a "reconsideration request" dated October 1, 2024 was received by Noridian. He had no knowledge of the October 1, 2024, reconsideration request and had no part in its preparation or submission. Again, he was excluded from and denied due process. [Decl. of Dr. Aguiluz, ¶23]

**THE NOVEMBER 15, 2024 NOTICES OF REVOCATION FROM NORIDIAN HEALTHCARE SOLUTIONS TO DR. AGUILUZ AND HIS PROFESSIONAL CORPORATION**

On November 15, 2024, Dr. Aguiluz received three notices of revocation from Noridian Healthcare Solutions: one directed to him personally, a second to his professional corporation, and a third to Oxnard Medical Group Inc. (collectively the "Noridian Notices"). [Decl. of Dr. Aguiluz, ¶24] This was the first Dr. Aguiluz had heard of any issue relating to improper Medicare billing and collections. [Decl. of Dr. Aguiluz, ¶24]

Each of the Noridian Notices informed Dr. Aguiluz in bold print that he has a "Right to Submit a Reconsideration Request" which must be received "within 65 calendar days of the date of this letter." 65 days from November 15, 2024, is Sunday, January 19, 2025. Dr. Aguiluz set his sights on this deadline and sought to retain counsel to assist him with this effort. In the meantime, on December 10, 2024, he sent a letter to Noridian confirming receipt of the Noridian Notices and advising Noridian of my intent to submit a Request for Reconsideration. [Decl. of Dr. Aguiluz, ¶26, Exh. 8] Dr. Aguiluz was and remains deeply distressed and concerned about the actions alleged in the Notices as, up until November 15, 2024, he had no knowledge of any alleged wrongdoing by Forever In Peace Hospice Care, Inc. [Decl. of Dr. Aguiluz, ¶26]

On December 12, Dr. Aguiluz was still working to find counsel, and sent a "Preliminary Request for Reconsideration" in which he made it clear that I may provide supplemental information and documents – before the January 19, deadline. [Decl. of Dr. Aguiluz, ¶27]

**NOTICE FROM NORIDIAN ON CHRISTMAS EVE 2024 THAT HIS REQUEST FOR RECONSIDERATION WILL NOT BE CONSIDERED**

As mentioned previously, on December 24, 2024, Dr. Aguiluz received a letter from Noridian responding to an October 1, 2024 reconsideration request **that he did not make and had never seen -- and took no part in preparing** and which is based on a "initial determination letter" from Noridian dated September 20, 2024 **that he has also never seen to this day.** [Decl. of Dr. Aguiluz, ¶28]

In its December 24, 2024, letter, Noridian states that "Noridian has identified that Amable Aguiluz's Medicare enrollment is currently in a revoked status under C.F.R. §424.535(a)(19). Due to the enrollment's status, any issues concerning the provider's reassignments cannot be addressed and Noridian is unable to render a decision in the matter."

It appears that actions taken in conjunction with national government services July 24, 2024, Notice – completely without Dr. Aguiluz's knowledge or input have corrupted his ability to proceed with a fair administrative reconsideration here. That is grossly fair, and particularly harsh, since his reputation and livelihood is at stake, and Noridian gave multiple written notices to him that the deadline for reconsideration submission is January 19, 2024.

**THERE IS NO BASIS FOR CMS OR ITS CONTRACTOR TO REVOKE DR. AGUILUZ'S MEDICARE ENROLLMENT AND BILLING PRIVILEGES**

1. **Dr. Aguiluz did Not Have "Managerial Control" of Forever In Peace Hospice Care, Inc.**

CMS or its contractor may revoke a supplier's Medicare enrollment and billing privileges for any of the reasons stated in 42 C.F.R. § 424535(A). In this matter, CMS has relied on subsection 424.535(a)(19) – Affiliation that poses an undue risk -- which provides for revocation when "CMS determines that the provider or supplier has or had an affiliation under §424.519 that poses an undue risk of fraud waste, or abuse to the Medicare program."

According to the Noridian Notices, Amable Aguiluz "was listed as being an individual with managerial control of Forever in Peace Hospice Care, Inc." It is not stated who made this listing. The fact is that Dr. Aguiluz did not have managerial control and has never identified or characterized himself to any governmental authority or otherwise, as having "managerial control" of Forever In Peace Hospice Care, Inc. (nor has he ever characterized himself in the course of his practice as having managerial control of Forever In Peace Hospice Care, Inc.). [Decl. of Dr. Aguiluz, ¶7]

2. **Independent Services Provided To Forever In Peace Hospice Care, Inc. By Dr. Aguiluz Created No Undue Risk Of Fraud, Waste, Or Abuse**

According to the Noridian Notices, Medicare Enrollment and Medicare billing privileges are subject to revocation because CMS "has determined that Dr. Aguiluz had an "affiliation" as defined in 42 CFR§424.502.

CMS determines whether any of the disclosed affiliations poses an undue risk of fraud, waste, or abuse by considering the following factors: After each factor listed, the facts relating to Dr. Amable and Forever In Peace Hospice Care, Inc. are inserted in brackets in bold type.

(1) The duration of the affiliation.

[**Dr. Aguiluz: less than a year, approximately four months at $500 flat fee/month]**

(2) Whether the affiliation still exists and, if not, how long ago it ended.

[**Dr. Aguiluz: No. Forever in Peace unilaterally stopped sending records for review in mid-2024]**

(3) The degree and extent of the affiliation.

[**Dr. Aguiluz: Dr. Aguiluz has no and has never had any interest or holdings in Forever In Peace Hospice Care, Inc., not an employee, no entitlement to profits, Medicare claims not relevant to fee**]

(4) If applicable, the reason for the termination of the affiliation.

[**Dr. Aguiluz: Not applicable**]

(5) Regarding the affiliated provider's or supplier's disclosable event under paragraph (b) of this section:

(i) The type of disclosable event.

[**Dr. Aguiluz: Apparently action against Dr. Aguiluz are related the July 2024 Notice of Revocation of Forever In Peace Hospice Care, Inc.'s Medicare billing privileges**]

(ii) When the disclosable event occurred or was imposed.

[**Dr. Aguiluz: Dr. Aguiluz does not know – not involved in process**]

(iii) Whether the affiliation existed when the disclosable event occurred or was imposed.

[**Dr. Aguiluz: No**.]

(iv) If the disclosable event is an uncollected debt:

**[Dr. Aguiluz: No.]**

(A) The amount of the debt.

[**Not applicable**]

(B) Whether the affiliated provider or supplier is repaying the debt.

[**Not applicable**]

(C) To whom the debt is owed.

**[Not applicable]**

(v) If a denial, revocation, termination, exclusion, or payment suspension is involved, the reason for the disclosable event.

[**Unknown to Dr. Aguiluz**]

(6) Any other evidence that CMS deems relevant to its determination.

In retrospect Dr. Aguiluz's decision to act as an outside consultant for Forever In Peace Hospice Care, Inc. may have been ill advised. However, Dr. Aguiluz's involvement with for Forever In Peace Hospice Care, Inc. does not rise to a "Affiliation" for purposes of applying §424.419. Dr. Aguiluz simply never had or exercised any managerial or operational control over Forever In Peace Hospice Care, Inc. Any labeling of Dr. Aguiluz by Forever In Peace Hospice Care, Inc. labeled him as a "managing director" is not relevant because he had no such authority as a matter of fact.

As such the Notice of Revocation and any Revocation Order instituted without appropriate notice should be set aside.

Very truly yours,

COLEMAN & HOROWITT, LLP

*/s/ Judith M. Sasaki*

JUDITH M. SASAKI

JMS/arm
Enclosures

WILLIAM H. COLEMAN (RET.)
DARRYL J. HOROWITT
DAVID J. WEILAND
GREGORY J. NORYS
ELIOT S. NAHIGIAN[1]
SHERYL D. NOEL
JUDITH M. SASAKI
STACY H. BOWMAN
C. FREDRICK MEINE III, APC[2]
SHERRIE M. FLYNN[3]
MICHAEL P. DOWLING
JENNIFER T. POOCHIGIAN

[1]CERTIFIED SPECIALIST: TAXATION LAW, ESTATE PLANNING, TRUST AND PROBATE LAW
[2]A PROFESSIONAL CORPORATION LICENSED IN CALIFORNIA AND WASHINGTON
[3]REGISTERED PATENT ATTORNEY

COLEMAN & HOROWITT, LLP

ATTORNEYS AT LAW

1901 AVENUE OF THE STARS, 2ND FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: (310) 286-0233
WEB: WWW.CH-LAW.COM

STEVEN C. CLARK
ROBERT K. ASHLEY
JUSTIN K. ROMIG
JARED R. CLEMENCE
[3,4]AISHA O. OTORI
HERMAN S. CHATRATH
[5]NICHOLAS F. PHILLIPS
ADRIANNA G. MARTINEZ
CAZ C. ASHJIAN
MATTHEW R. NUTTING
GARY S. SHUSTER
DANIEL L. RUDNICK

[4] LICENSED IN CALIFORNIA & ILLINOIS
[5] LICENSED IN CALIFORNIA, OREGON MINNESOTA & ILLINOIS

WRITER'S E-MAIL
JSASAKI@CH-LAW.COM


January 16, 2025

**Via FEDX # 771486126961**
**Electronic Mail to: ProviderEnrollmentAppeals@cms.hhs.gov**
Centers for Medicare & Medicaid Services
Center for Program Integrity
Provider Enrollment & Oversight Group
Attn: Division of Provider Enrollment Appeals
7500 Security Boulevard
Mailstop: AR-19-51
Balitmore, MD 21244-1850

Re: **Amable Aguiluz, M.D., Response to November 15, 2024, Notice of Revocation**
**REQUEST FOR RECONSDIERATION**
Reference: NPI[redacted]596; PTAN(S): D[redacted]25A, D[redacted]25Y, D[redacted]25W, D[redacted]25V, CB[redacted]780, CB[redacted]011, CB[redacted]255, CB[redacted]127, CB[redacted]650, CB[redacted]757, CB[redacted]114, CB[redacted]387, CB[redacted]637, CB[redacted]645, CA[redacted]254, CA[redacted]571, CA[redacted]457, CB[redacted]605, CB[redacted]401, CA[redacted]839, CB[redacted]583, CA[redacted]942, CB[redacted]103, CB[redacted]258

Dear Candace,

This Reconsideration Request is written in response to a November 15, 2024, Notice of Revocation from Noridian Healthcare Solutions ("Noridian"). On November 15, 2024, three separate notices of revocation were sent by Noridian: one directed to Dr. Aguiluz personally, a second to his professional corporation, and a third to Oxnard Medical Group Inc. (collectively the "Noridian Notices"). [Decl. of Dr. Aguiluz, ¶24] All three Notices are essentially identical and involve Forever In Peace Hospice, Inc.

November 15, 2024, was the first Dr. Aguiluz had heard of any issue relating to improper Medicare billing and collections. [Decl. of Dr. Aguiluz, ¶24] Each of the Noridian Notices informed Dr. Aguiluz in bold print that he has a "Right to Submit a Reconsideration

Request" which must be received "within 65 calendar days of the date of this letter." 65 days from November 15, 2024, is Sunday, January 19, 2025. Accordingly, the following is a timely submission of a Request For Reconsideration.[1]

**BACKGROUND AND PROCEDURAL HISTORY**

A. Dr. Amable Aguiluz

Dr. Amable Aguiluz ("Dr. Aguiluz") is a California resident and has been a citizen of the United States since 1974. [Decl. of Dr. Aguiluz, Exh.1] He practices general and urgent care medicine and earned his medical degree from University of the East Ramon Magsaysay Memorial Center, College of Medicine in the Philippines in 1975. [Decl. of Dr. Aguiluz, Exh.2 ] Thereafter, he completed his internship in Michigan at Highland Park General Hospital in 1975 and his residency in Michigan at St. John Providence Hospital. [Decl. of Dr. Aguiluz, Exh.3] Dr. Aguiluz is a veteran who served as a medical officer in the United States Navy from 1977 to 1980. [Decl. of Dr. Aguiluz, Exh.4]

Following his actions as a military officer in the US Navy, Dr. Aguiluz has been practicing medicine for over forty years, from 1980 to date. Dr. Aguiluz operates his practice through his professional corporation known as Amable Delos Reyes Aguiluz DR MD, which was established in November 2011, and which is in good standing with the California Secretary of State. From 2000 to date, Dr. Aguiluz's medical practice is located at 21500 Pioneer Boulevard, Suite 309, Hawaiian Gardens, CA 90716-2605. Dr. Aguiluz has a physical office space at the Pioneer Boulevard address and operates out of that address full-time.

Dr. Aguiluz is also part of the Oxnard Medical Group which was created in May 2019, currently doing business at 12511 Oxnard Street, North Hollywood, California 91606, and which is in good standing with the California Secretary of State. Meetings relating to staff and other issues of the business of Oxnard Medical Group were held at the 112511 Oxnard Street, North Hollywood, California 91606 address. [Decl. of Dr. Aguiluz, ¶4]

**FOREVER IN PEACE HOSPICE CARE, INC.**

Dr Aguiluz does not have and has never had any direct or indirect ownership in Forever In Peace Hospice Care, Inc. In fact, Dr. Aguiluz does not know who or what entity has or may have had any such ownership in Forever In Peace Hospice Care, Inc., either directly or indirectly. [Decl. of Dr. Aguiluz, ¶5]

---

1 As three separate Noridian Notices were sent, each entity will submit a separate Request For Reconsideration.

Dr. Aguiluz does not have and has never had any entitlement to profits generated by Forever In Peace Hospice Care, Inc. [Decl. of Dr. Aguiluz, ¶6. Dr. Aguiluz does not have and has never had any access or privileges to Forever In Peace Hospice Care, Inc.'s account(s) or monetary source(s) of any kind. He also does not have any authority to bind Forever In Peace Hospice Care, Inc. to any contract, oral or written. [Decl. of Dr. Aguiluz, ¶6]

Dr. Aguiluz does not have and has never had any managerial control of Forever In Peace Hospice Care, Inc. [Decl. of Dr. Aguiluz, ¶7.] He does not have contact or oversight responsibility for staff or patients. [Decl. of Dr. Aguiluz, ¶1] Dr. Aguiluz does not have and have never had any interest in any entity that exercises operational or managerial control directly or indirectly or that conducts the day-today operations of Forever In Peace Hospice Care, Inc. [Decl. of Dr. Aguiluz, ¶7] In fact, he does not know who or what entity exercises operational or managerial control directly or indirectly that conducts the day-today operations of Forever In Peace Hospice Care, Inc. [Id. at ¶7]

Dr. Aguiluz does not have an office at, nor has he ever had an office at any Forever In Peace Hospice Care, Inc. location or place of business, including its 12444 Victory Blvd. Suite 403, office. He never received any mail or directed that any mail be sent to him at any Forever In Peace Hospice Care, Inc. location, including its 12444 Victory Blvd. Suite 403 office. He did not review or have access to incoming mail sent to Forever In Peace Hospice Care, Inc. [Decl. of Dr. Aguiluz, ¶8]

Dr. Aguiluz did not conduct business at any Forever In Peace Hospice Care, Inc. location. As more specifically described below, the limited tasks he performed independently for Forever In Peace Hospice Care, Inc. were performed off-site. [Decl. of Dr. Aguiluz, ¶9] Dr. Aguiluz is not and has never been an employee of Forever In Peace Hospice Care, Inc. or served on its Board of Directors or functioned in any executive or managerial capacity. He has never received a W-2 wage and tax statement from Forever In Peace Hospice Care, Inc. and has no entitlement to coverage of business expenses, vacation, sick leave or either benefits. [Decl. of Dr. Aguiluz, ¶10]

Dr. Aguiluz has no reassignment relationship with Forever In Peace Hospice Care, Inc., through which he could or ever expected to receive any portion of Medicare payments made to Forever In Peace Hospice Care, Inc. Dr. Aguiluz did not receive any portion of Medicare payments made to Forever In Peace Hospice Care, Inc. [Decl. of Dr. Aguiluz, ¶11]

Neither Dr. Aguiluz nor his company, Amable Delo Reyes Aguiluz DR MD, Inc. ever provided any billing and collection services to Forever In Peace Hospice Care, Inc. He was never provided with or reviewed or created any billing or collection records relating to Forever In Peace Hospice Care, Inc. [Decl. of Dr. Aguiluz, ¶12]

**THE LIMITED INDEPENDENT RELATIONSHIP WITH FOREVER IN PEACE HOSPICE CARE, INC.**

Dr. Aguiluz became aware of Forever in Peace Hospice Care, Inc. when it was referred to him in 2023. Forever in Peace Hospice Care, Inc., was looking for a physician to work as an outside consultant who could oversee incoming referrals by reviewing patients' medical records to determine whether the respective patient's condition qualifies the patient for hospice. [Decl. of Dr. Aguiluz, ¶14] In or about 2023, he agreed to provide consulting services for a monthly fee of $500. He never met with patients directly or provided any other service to Peace Hospice Care, Inc. [Id.]

Medical records were delivered to the Oxnard Medical Group office located at 12511 Oxnard Street, North Hollywood, California 91606 address, by a representative of Forever In Peace Hospice Care, Inc. for Dr. Aguiluz to review. Thereafter the files were picked up by Forever In Peace Hospice Care, Inc. at Dr. Aguiluz's Oxnard address. Dr. Aguiluz did not review records at any Peace Hospice Care Center. [Decl. of Dr. Aguiluz, ¶15]

1. **The Alleged Misconduct**

Dr. Aguiluz had nothing to gain from Medicare billing or collections by In Peace Hospice Care, Inc., one way or the another and his consulting fee was not tied to a finding of qualification one way or another. Dr. Aguiluz was not asked to respond to noncompliant denials. [Decl. of Dr. Aguiluz, ¶16] Dr. Aguiluz's request for billing records to Forever In Peace Hospice Care, Inc [Decl. of Dr. Aguiluz, Exh. 6] has gone unresponded. Also, Forever In Peace Hospice Care, Inc has kept the Notices from Dr. Aguiluz, which suggests that it has its own agenda and feels no obligation to me.

**THE ABSOLUTE LACK OF DUE PROCESS**

Dr. Aguiluz's Medicare enrollment privilege was revoked based on communications between National Government Services ["NGS"] and Forever In Peace Hospice Care, Inc. completely without his knowledge of the claim or any verified input on his behalf. Again, as soon as he became aware of the NGS Notice, Dr. Aguiluz requested that Forever In Peace Hospice Care, Inc., provide him with any and all documents and information relating to the revocation (if any) but have received no response. [Decl. of Dr. Aguiluz, ¶19. Exh. 6] Dr. Aguiluz was never provided the requested documents and as such, was never given a fair opportunity to defend himself.

1. **The July 24 2024 Notice Of Revocation From National Government Services To Forever In Peace Hospice Care, Inc.**

The July 24, 2024, Notice of Revocation to Forever In Peace Hospice Care, Inc. sent by National Government Services (the "July 24, 2024 Notice") was addressed only to the Forever In Peace Hospice Care, Inc. and mailed to its 12444 Victory Blvd. Suite 403 location. The July 24, 2024, Notice was never sent to Dr. Aguiluz at any of his known and registered personal or business addresses. [Decl. of Dr. Aguiluz, ¶20] Again, he never had an office at nor received any mail at Forever In Peace Hospice Care, Inc. including its 12444 Victory Blvd. Suite 403 – or elsewhere.

No one at Forever In Peace Hospice Care, Inc. or otherwise advised Dr. Aguiluz of the existence of the July 24, 2024 Notice or provided him with a copy. He saw the July 29, 2024, Notice for the first time when it was sent in the November 15, 2024 Notice Letter.

2. **The Initial Determination Letter dated September 20, 2024**

Dr. Aguiluz learned for the first time by a letter to him dated December 24, 2024, from Noridian Healthcare Solutions that a "initial determination letter" dated September 20, 2024, had been issued by Noridian. [Decl. of Dr. Aguiluz ¶22, Exh. 7] He did not receive and, to date has no knowledge of the September 20, 2024, initial determination letter sent by Noridian. Without any such knowledge or information Dr. Aguiluz was not in a position to respond and was denied due process. [Decl. of Dr. Aguiluz, ¶22]

3. **The October 1, 2024 Reconsideration Request**

Dr. Aguiluz also learned (for the first time by the December 24, 2024, letter) that a "reconsideration request" dated October 1, 2024 was received by Noridian. He had no knowledge of the October 1, 2024, reconsideration request and had no part in its preparation or submission. Again, he was excluded from and denied due process. [Decl. of Dr. Aguiluz, ¶23]

**THE NOVEMBER 15, 2024 NOTICES OF REVOCATION FROM NORIDIAN HEALTHCARE SOLUTIONS TO DR. AGUILUZ AND HIS PROFESSIONAL CORPORATION**

On November 15, 2024, Dr. Aguiluz received three notices of revocation from Noridian Healthcare Solutions: one directed to him personally, a second to his professional corporation, and a third to Oxnard Medical Group Inc. (collectively the "Noridian Notices"). [Decl. of Dr. Aguiluz, ¶24] This was the first Dr. Aguiluz had heard of any issue relating to improper Medicare billing and collections. [Decl. of Dr. Aguiluz, ¶24]

Each of the Noridian Notices informed Dr. Aguiluz in bold print that he has a "Right to Submit a Reconsideration Request" which must be received "within 65 calendar days of the date of this letter." 65 days from November 15, 2024, is Sunday, January 19, 2025. Dr. Aguiluz set his sights on this deadline and sought to retain counsel to assist him with this effort. In the meantime, on December 10, 2024, he sent a letter to Noridian confirming receipt of the Noridian Notices and advising Noridian of my intent to submit a Request for Reconsideration. [Decl. of Dr. Aguiluz, ¶26, Exh. 8] Dr. Aguiluz was and remains deeply distressed and concerned about the actions alleged in the Notices as, up until November 15, 2024, he had no knowledge of any alleged wrongdoing by Forever In Peace Hospice Care, Inc. [Decl. of Dr. Aguiluz, ¶26]

On December 12, Dr. Aguiluz was still working to find counsel, and sent a "Preliminary Request for Reconsideration" in which he made it clear that I may provide supplemental information and documents – before the January 19, deadline. [Decl. of Dr. Aguiluz, ¶27]

**NOTICE FROM NORIDIAN ON CHRISTMAS EVE 2024 THAT HIS REQUEST FOR RECONSIDERATION WILL NOT BE CONSIDERED**

As mentioned previously, on December 24, 2024, Dr. Aguiluz received a letter from Noridian responding to an October 1, 2024 reconsideration request **that he did not make and had never seen -- and took no part in preparing** and which is based on a "initial determination letter" from Noridian dated September 20, 2024 **that he has also never seen to this day.** [Decl. of Dr. Aguiluz, ¶28]

In its December 24, 2024, letter, Noridian states that "Noridian has identified that Amable Aguiluz's Medicare enrollment is currently in a revoked status under C.F.R. §424.535(a)(19). Due to the enrollment's status, any issues concerning the provider's reassignments cannot be addressed and Noridian is unable to render a decision in the matter."

It appears that actions taken in conjunction with national government services July 24, 2024, Notice – completely without Dr. Aguiluz's knowledge or input have corrupted his ability to proceed with a fair administrative reconsideration here. That is grossly fair, and particularly harsh, since his reputation and livelihood is at stake, and Noridian gave multiple written notices to him that the deadline for reconsideration submission is January 19, 2024.

**THERE IS NO BASIS FOR CMS OR ITS CONTRACTOR TO REVOKE DR. AGUILUZ'S MEDICARE ENROLLMENT AND BILLING PRIVILEGES**

1. **Dr. Aguiluz did Not Have "Managerial Control" of Forever In Peace Hospice Care, Inc.**

CMS or its contractor may revoke a supplier's Medicare enrollment and billing privileges for any of the reasons stated in 42 C.F.R. § 424535(A). In this matter, CMS has relied on subsection 424.535(a)(19) – Affiliation that poses an undue risk -- which provides for revocation when "CMS determines that the provider or supplier has or had an affiliation under §424.519 that poses an undue risk of fraud waste, or abuse to the Medicare program."

According to the Noridian Notices, Amable Aguiluz "was listed as being an individual with managerial control of Forever in Peace Hospice Care, Inc." It is not stated who made this listing. The fact is that Dr. Aguiluz did not have managerial control and has never identified or characterized himself to any governmental authority or otherwise, as having "managerial control" of Forever In Peace Hospice Care, Inc. (nor has he ever characterized himself in the course of his practice as having managerial control of Forever In Peace Hospice Care, Inc.). [Decl. of Dr. Aguiluz, ¶7]

2. **Independent Services Provided To Forever In Peace Hospice Care, Inc. By Dr. Aguiluz Created No Undue Risk Of Fraud, Waste, Or Abuse**

According to the Noridian Notices, Medicare Enrollment and Medicare billing privileges are subject to revocation because CMS "has determined that Dr. Aguiluz had an "affiliation" as defined in 42 CFR§424.502.

CMS determines whether any of the disclosed affiliations poses an undue risk of fraud, waste, or abuse by considering the following factors: After each factor listed, the facts relating to Dr. Amable and Forever In Peace Hospice Care, Inc. are inserted in brackets in bold type.

(1) The duration of the affiliation.

[**Dr. Aguiluz: less than a year, approximately four months at $500 flat fee/month]**

(2) Whether the affiliation still exists and, if not, how long ago it ended.

[**Dr. Aguiluz: No. Forever in Peace unilaterally stopped sending records for review in mid-2024]**

(3) The degree and extent of the affiliation.

[**Dr. Aguiluz: Dr. Aguiluz has no and has never had any interest or holdings in Forever In Peace Hospice Care, Inc., not an employee, no entitlement to profits, Medicare claims not relevant to fee**]

(4) If applicable, the reason for the termination of the affiliation.

[**Dr. Aguiluz: Not applicable**]

(5) Regarding the affiliated provider's or supplier's disclosable event under paragraph (b) of this section:

(i) The type of disclosable event.

[**Dr. Aguiluz: Apparently action against Dr. Aguiluz are related the July 2024 Notice of Revocation of Forever In Peace Hospice Care, Inc.'s Medicare billing privileges**]

(ii) When the disclosable event occurred or was imposed.

[**Dr. Aguiluz: Dr. Aguiluz does not know – not involved in process**]

(iii) Whether the affiliation existed when the disclosable event occurred or was imposed.

[**Dr. Aguiluz: No**.]

(iv) If the disclosable event is an uncollected debt:

**[Dr. Aguiluz: No.]**

(A) The amount of the debt.

[**Not applicable**]

(B) Whether the affiliated provider or supplier is repaying the debt.

[**Not applicable**]

(C) To whom the debt is owed.

**[Not applicable]**

(v) If a denial, revocation, termination, exclusion, or payment suspension is involved, the reason for the disclosable event.

[**Unknown to Dr. Aguiluz**]

(6) Any other evidence that CMS deems relevant to its determination.

In retrospect Dr. Aguiluz's decision to act as an outside consultant for Forever In Peace Hospice Care, Inc. may have been ill advised. However, Dr. Aguiluz's involvement with for Forever In Peace Hospice Care, Inc. does not rise to a "Affiliation" for purposes of applying §424.419. Dr. Aguiluz simply never had or exercised any managerial or operational control over Forever In Peace Hospice Care, Inc. Any labeling of Dr. Aguiluz by Forever In Peace Hospice Care, Inc. labeled him as a "managing director" is not relevant because he had no such authority as a matter of fact.

As such the Notice of Revocation and any Revocation Order instituted without appropriate notice should be set aside.

Very truly yours,

COLEMAN & HOROWITT, LLP

*/s/ Judith M. Sasaki*

JUDITH M. SASAKI

JMS/arm
Enclosures